## McGARVEY v. SWAN, CITY TREASURER.

Municipal Corporations—Classification—Special Charters—Application of Constitutional Provision for Organizing and Classifying by General Laws—Constitutional Law—Local and Special Laws—Classification of Cities by Population—Specially Chartered Cities—Classification of—Special Assessments for Construction of Sewers—Validity of Statute Authorizing.

1. The provision·of the Constitution (Art. 13, Sec. 1) that the Legislature shall provide by general laws for the organization and classification of municipal corporations, limiting the number of such classes to four, and that cities and towns then existing under special charters may abandon the same and reorganize under the general laws, was not intended to abrogate any special charter previously granted, nor were the four classes so provided for intended to include municipal corporations under special charter then in existence.

2. By said section of the Constitution the authority is granted to the Legislature to provide for four classes of municipal corporations, exclusive of or in addition to the corporations then existing under special charter.

3. The provision of the section to the effect that the powers of each class of municipal corporations shall be so defined that no member of a class shall have any powers or be subject to any restrictions other than all in the same class applies only to the four classes authorized by the section to be organized under general laws.

4. The limitation upon the number of classes and the restriction upon the classification of municipal corporations contained in Section 1 of Article 13, of the Constitution, do not apply to or control legislation respecting cities or towns legally existing under special charter when the Constitution took effect, during the continuance thereof under such charters.

5. The restriction of the Constitution concerning special legislation (Art. 3, Sec. 27) was directed against the State Legislature, and did not abrogate previously enacted valid laws.

6. Though the special charter of a municipal corporation cannot, under the Constitution, be amended by a local or special law, it may be amended in effect by a general law.

7. A reasonable classification of objects of legislation or localities may be resorted to without rendering a statute objectionable as a local or special law, within the meaning of the constitutional inhibition of such laws. The question in each case is whether the classification is a proper one.

8. In view of the difficulty in drawing a line between what is and what is not a reasonable classification, some regard ought to be had for the legislative determination, as that branch of the government must be supposed to have acted from proper motives, and with a fair knowledge of conditions and necessities; and the abuse of legislative discretion as to classification should be reasonably clear to justify judicial interference.

9. Classification of cities, for various purposes of municipal government, by population is proper, if such classification appears to be reasonable, and not arbitrary; and the fact that only one city is within the class at the time does not, of itself, necessarily render an act special.

10. In an act of the Legislature designating the district to be charged with special assessments for the construction of sewers in a certain class of municipal corporations, the class was partly described as every city "heretofore" incorporated under a special charter. *Held,* that since the only cities under special charter were those "heretofore" incorporated, as the Constitution had prohibited such incorporation of any others, the word "heretofore" added nothing to the limitation of the class, but had it been omitted the class would have remained the same, and, hence, its use was not fatal to the act, if otherwise valid, as preventing a further accession to the class.

11. A provision in an act legislating for certain cities containing not less than a prescribed population, "to be determined by the last preceding United States Census," refers not to the census last preceding the enactment of the statute, but the one last preceding any date which might become material in ascertaining whether any particular city had come within the statute; and, hence, did not have the effect of presently determining the entire membership in the class.

12. Specially chartered cities are entitled to be regarded as in a class separate and distinct from those organized under general laws, and a law applicable alone to municipalities existing under special charter, if otherwise unobjectionable, is to be regarded as general and not special.

13. Specially chartered cities may be legally classified by population if the same be reasonable, in order to render legislation suited to the different conditions and necessities of such cities, it not being required by the Constitution that all cities acting under special charter should be treated as a single or indivisible class. The test of the classification will be whether it is reasonable, having regard to the subject of the legislation.

14. A statute regulating special assessments for sewer construction was made applicable to cities under special charter having a population of not less than 10,000 inhabitants. *Held,* that the classification by population was not unreasonable.

15. Such statute is not rendered local or special by a provision applying it only to those cities acting under special charter with the prescribed population "having power to make special assessments for the construction of sewers."

16. Special assessments for street and other municipal improvements upon abutting or adjacent property are levied upon the theory of special benefits to the property assessed.

17. The mere fact that a special assessment for a street improvement was levied according to area, frontage, or value does not necessarily disprove the consideration of benefits, and, hence, the validity of an assessment from a constitutional standpoint would not be considered solely upon an allegation that the same was levied according to area, without regard to benefits, in the absence of a showing as to the procedure adopted and followed in levying the assessment.

18. The mere fact that a corner lot has once had an assessment imposed upon it for the construction of a sewer in front of it, along one of the streets upon which it abuts, does not necessarily furnish a constitutional reason why it may not be subsequently assessed for the construction of a sewer along and through the other street upon which it abuts.

19. In order to sustain a statute providing for making special assessments upon abutting or adjacent property for municipal improvements on the basis of area, frontage or value, it is not necessary to hold that the power of the Legislature is unlimited, so as to prevent judicial interference where, in the enforcement of the rule prescribed, manifest injustice and inequality or a violation of a constitutional principle is shown.

20. Generally, the legislative authority is limited by the principle that the purpose for which the tax or assessment is

laid must be a public one, and that it must directly appertain to the district taxed.

21. It is essential to the validity of an assessment that it be levied under a valid and constitutional statute, but before a court will consider the constitutionality of a statute and declare it void, the party assailing it must present a case showing some just grievance, and that he is entitled to some relief.

22. The statute (Laws 1903, Ch. 7) providing that special assessments for the construction of sewers in cities of a prescribed class shall be made on all lots to the center of the block extending along the street, the distance improved, or to be improved, according to the area of the lots, without regard to the improvements thereon, is to be construed as intended to apply to those cases where special assessments would be proper, and as resting upon the theory of benefits, and stating ·a rule which, in the judgment of the Legislature, will apportion the cost with practical equality as between the various lots specially benefited, and that all lots to the center of the block on each side of the street will be benefited in proportion to the area thereof.

23. Since the statute prescribes a rule or standard for assessing the benefits, quite uniformly regarded as fair, just and equitable in its general application, instead of declaring it incapable of supporting any assessment on the ground that exceptional cases of injustice and deprivation of constitutional rights might arise under it, it should be sustained, in the absence of a showing of its unconstitutional operation in individual cases.

24. Considering the question of the constitutionality of the stattute with respect to the rule prescribed for assessing the benefits, from the standpoint of the issues in the present case upon a demurrer to the petition, it is held that the statute is not obnoxious to the Constitution, and that a particular assessment for sewer construction complained of was valid as against objections suggested by the questions reserved for the court's decision.

[Decided July 15, 1908.]                    (96 Pac. 697.)

Reserved questions from the District Court, Laramie County, Hon. Roderick N. Matson, Judge.

The action was brought in the District Court by Charles E. McGarvey against Daniel S. Swan, as City Treasurer of

the City of Cheyenne, to enjoin the collection of a special assessment upon certain property of plaintiff, levied to pay the cost of constructing a sewer along a street upon which said property abuts. The case came to the Supreme Court upon certain reserved questions deemed to arise upon the consideration of a demurrer to the petition. The questions and facts are stated in the opinion.

*Ray E. Lee,* for the plaintiff.

Chapter 7, Laws 1903, was unconstitutional as a local and special act within the prohibition of Section 27, of Article III, of the Constitution, because it was so restricted in operation that it could never apply to any other municipality than the City of Cheyenne; because it was restricted to existing conditions; and because a general law would apply. (Boyd v. Milwaukee, 92 N. W. 456; State v. Turner, 107 S. W. 1064; Murnane v. St. Louis, 123 Mo. 479; Henderson v. Koenig, 168 Mo. 375; State v. Messerly, 198 Mo. 351; Wagner v. Milwaukee, 112 Wis. 601; Burnham v. Milwaukee, 98 Wis. 128; Blankenburg v. Block, 200 Pa. St. 629; Longview v. Crawfordsville, 73 N. E. 78; Johnson v. Milwaukee, 88 Wis. 383; Platt v. Craig, 66 O. St. 75; State v. Jones, 66 O. St. 453; Topeka v. Gillett, 32 Kan. 431; Ayars v. Westfield, 122 Pa. St. 266.) From the authorities cited the following principles are deducible: 1. A natural or reasonable classification for legislative purposes does not violate the constitutional provisions requiring equality and uniformity in the operation of laws. 2. The law must apply to all members of any given class without distinction or exception, no matter how that class is established. 3. A law which establishes a class, but precludes all possibility of other members ever entering that class, falls within the constitutional prohibition. 4. Where a general law is applicable a special law is invalid. It has been held proper to classify cities according to population for certain purposes, but this classification must be open,

and must not unalterably fix any given city within a given class.

Evidently the Legislature had some one city in mind when the act in question was passed and they desired to describe it so carefully that no one could mistake it. The Constitution prohibits the incorporation of cities under special charter now, so the Legislature said "heretofore." But there might be some city incorporated under the general law of Wyoming that would meet the other qualifications, so it was declared, "incorporated under a special charter." But this even might let in some undesirable member, so that it further provided, "having a population of not less than ten thousand inhabitants." But this was not satisfactory, so there was added the words: "to be determined by the last preceding United States census." And in addition to that the further restriction: "having power to make special assessments for the construction of sewers."

At the time the act was passed there were four cities incorporated under special charters, and one city of the four that had a population of not less than ten thousand inhabitants. This same city had that population according to the last preceding United States census, and alone had power to make special assessments for the construction of sewers. So there was one city (Cheyenne) in the exclusive class created by the Legislature.

Even granting that cities could still incorporate under special charters at the time this act was passed, the word heretofore would exclude them. If some city under special charter, other than Cheyenne, should attain to a population of ten thousand inhabitants, that would not be its population according to the United States census for the year 1900, which must have been the one referred to by the "last preceding United States census." But granting that this would not exclude other cities, the last qualification, having power to make special assessments for the construction of sewers, would bar them all.

A classification for legislative purposes must be reasonable. Section 1638, Revised Statutes 1899, expresses the general law of the State concerning special assessments for the construction of sewers. This law is radically different from the law of 1903. It provides for special assessments according to benefits conferred, and for the front foot rule of apportionment. This is the law which governs the making of special assessments in cities of the first class organized under the general laws. The act attempts to establish a different method in a certain city organized under a special charter, which already had a method of making special assessments differing from the general law. What reason is there for not applying the same law to cities of the same class, regardless of whether their charters are special or general, so far as making special assessments is concerned? All cities having the same population are supposed to have practically the same local conditions to meet, therefore, they are put into one class. If there is not some inherent reason for a distinction between such cities, then a classification making such a distinction is not reasonable. (1 Suth. Stat. Const., Ch. 6.)

The act was unconstitutional because it enacted a new class of municipal corporations, when such corporations had already been divided into four classes, to which number such classes are limited by the Constitution. (Art. 13, Sec. 1.) The four classes were: (1) Cities incorporated under special charters; (2) Towns incorporated under the general law of Wyoming; (3) Cities of the second class incorporated under the general law of Wyoming; (4) Cities of the first class incorporated under the general law of Wyoming.

The act was unconstitutional, because it authorized the taking of private property for public use without just compensation, and also because it authorized the taking of property without due process of law. (Dillon Mun. Corp., Sec. 761 *et passim*; Burroughs Taxation, p. 460 *et seq.*; Cooley, Taxation, Ch. 20; Hamilton, Law of Special Assessments,

Secs. 150-152, 238-239; Norwood v. Baker, 172 U. S. 269;
State v. Mayor, 42 Atl. 773; White v. Tacoma, 109 Fed.
32; Dexter v. Boston, 57 N. E. 379; Chicago v. Blair,
149 Ill. 310; State v. Comm'rs, 41 N. J. L. 83; Asberry v.
Roanoke, 22 S. E. 360; Doughten v. Camden, 63 Atl. 170;
Boyden v. Brattleboro, 37 Atl. 164; Hammett v. Philadel-
phia, 65 Pa. St. 146.)     Most of the authorities cited by
the defendant declare that it is the province of the Leg-
islature to determine the question of benefits, hence when
this has once been so determined, they refuse to interfere
in behalf of the property holder.     No doubt it is proper for
the Legislature to decide whether or not the laying of sew-
ers, the establishing of water works, and the paving of
streets are of such especial benefit to the community and
property immediately surrounding the place where such
improvements are to be made, that a special assessment is
proper.     But it is not the function of the Legislature to
predetermine in all cases that a certain area is equally
benefited.

If it should be held that those applying the rule estab-
lished by the act had the power to consider the question of
benefits and apply the rule accordingly, still they must hold
the assessment in question unconstitutional; for it is alleged
in the petition and admitted by the demurrer, that the
council did not consider or discuss the question as to whether
or not the property of this plaintiff or of any other person
assessed would be benefited.     The authorities cited by us
hold:   1.   That special assessments must be made accord-
ing to benefits conferred;   2.   That something of value
must be added to the property assessed, which it did not
before possess, before it can be said to be benefited;   3.   That
where property is assessed in excess of benefits conferred,
it is by that much a taking of property for public use without
just compensation;   4.   That the question of benefits con-
ferred is not finally determined by the Legislature, but the
courts have authority to review assessments and hold them
and the laws under which they are made invalid and un-

constitutional. This, we submit, is the holding of the better reasoned cases.

*William A. Riner,* for the defendant.

Section 28 of Article 1, and Section 1 of Article 15 of the Constitution, have no application to the case at bar. They refer to taxation solely. Likewise Section 33 of Article 1 refers only to eminent domain. (Cooley on Taxation, 1199; Banaz v. Smith, (Cal.) 65 Pac. 309; Heman v. Schulte, (Mo.) 66 S. W. 163; Chambers v. Satterlee, 40 Cal. 513; Williams v. Mayor, 2 Mich. 560; Bloomington v. Latham, 142 Ill. 462; Hamilton Sp. Assm'ts., Sec. 162.)

The principal objection raised to the area rule of apportionment seems to be that it violates the provision embodied in Sections 6 and 7 of Article 1 of the Constitution. There is no doubt, however, that the area rule of apportionment as prescribed by Chapter 7, Laws 1903, is entirely valid when viewed in the light of the constitutional provisions last referred to. The overwhelming weight of authority sustains this method of apportionment in special assessments for public improvements. Reference to text-books and cases alike demonstrate this to be true. Besides it is to be continually borne in mind that it is thoroughly well established by the current of authority that "a public improvement having been made, the question of determining the area benefited by such improvement is generally held to be a legislative function, and such legislative determination, unless palpably unjust," is usually conclusive. (McQuillin Mun. Ord., p. 820; Williams v. Eggleston, 170 U. S. 304; R. R. Co. v. Decatur, 146 U. S. 190; Spencer v. Merchant, 125 U. S. 345, 355; Hagar v. Recl. Dist., 111 U. S. 701; 2 Dillon Mun. Corp., (4th Ed.) Sec. 752; Parsons v. Dist. of Columbia, 170 U. S. 45; Chadwick v. Kelly, 187 U. S. 540.) The Legislature has determined by the act in question that the lots in the district mentioned are improved and benefited. Not only was such determination constitutional, but

the rule prescribed is a just one.  (Hamilton, Sp. Assess'ts Sec. 230; McQuillin, Mun. Ord. 821; 1 Abbott Mun. Corp., Sec. 348; R. Co. v. Lindquist, (Ia.) 93 N. W. 104; Gillette v. Denver, 21 Fed. 822; Denver v. Dumars, 80 Pac. 114; St. Joseph v. Farrel, 106 Mo. 437; Heman v. Allen, (Mo.) 57 S. W. 559; Shumate v. Heman, 181 U. S. 402; Zehnder v. Barber &c., Co., 197 U. S. 430.)

The case of Norwood v. Baker, 172 U. S. 269, was for a time much misunderstood, but its application has in more recent decisions been limited to the facts in that case. (French v. Paving Co., 181 U. S. 324; Tonawanda v. Lyon, 181 U. S. 389; Wright v. Davidson, 181 U. S. 371; Cass, &c., Co., v. Detroit, 181 U. S. 396: Detroit v. Parker, 181 U. S. 399; Wormley v. District, 181 U. S. 402; Shumate v. Heman, 181 U. S. 402; Farrell v. West Chicago, &c., 181 U. S. 404.)

Assessments for two or more sewers have been repeatedly upheld where such sewers have been adjacent to property along said streets.  (Allen v. Woods, (Ky.) 45 S. W. 106; Culberson v. Knight, 152 Ind. 121; Bryan v. Foley, (Ind.) 47 N. E. 351; People v. Adams, 18 N. Y. Supp. 443; Rich v. Woods, (Ky.) 82 S. W. 576; Phil. v. Cadwallader, 3 Pa. Co. Court, 203; Michener v. Phil., 118 Pa. St. 535.)

The act was not a local or special law.  Such provisions of the Constitution as are referred to in this connection do not apply to special assessments, but are directed at taxation for general purposes.  Cities operating under special charters form a class by themselves.  (People v. Londoner, (Colo.) 22 Pac. 765; Ulbrecht v. Keokuk, (Ia.) 97 N. W. 1082; Johnson v. Milwaukee, (Wis.) 60 N. W. 270; Rutherford v. Heddens, 82 Mo. 388; Lewis' Suth. Stat. Const., Secs. 88, 206; Rutherford v. Hamilton, 97 Mo. 543; Haskel v. Burlington, 30 Ia. 232.)

It is urged that because it is alleged in the petition: "That said sewer is not of any value, use or benefit to said plaintiff and does not in any way add to, benefit or im-

(5)

prove said property belonging to this plaintiff, and can not be of any use, benefit, value or improvement to the said property" that the demurrer admits these allegations to be true, and consequently the illegality of the special assessment is demonstrated. There are several answers to this contention: First, the Legislature has the exclusive power to declare what property is benefited, provided it adopts a reasonably fair method of determining the same. Second, the allegation is a statement of inferences not warranted by the facts set forth in the petition, and as such, are not admitted by the demurrer. (Ricketts v. Crewdson, 13 Wyo. 300.) The facts which are well pleaded must be the controlling factor in the disposition of the cause and not conclusions of law or inferences unsupported by the facts.

(In a reply brief counsel for defendant cited the following additional authorities on the subject of special legislation. State v. Hancock, 66 N. J. L. 133; State v. Cooley, 56 Minn. 540; Standard Cattle Co. v. Baird, 8 Wyo. 144; Van Riper v. Parsons, 40 N. J. L. 125.)

POTTER, CHIEF JUSTICE.

This case has been sent here upon the order of the district court in and for the County of Laramie, for a decision upon certain reserved questions involving the constitutionality of an act of the legislature known as Chapter 7 of the published laws of the session of 1903. The statute provides as follows:

"That in every city of this State heretofore incorporated under a special chapter, and not under the general law of Wyoming, and having a population of not less than ten thousand inhabitants, to be determined by the last preceding United States census, and having power to make special assessments for the construction of sewers, such assessments shall be made on all lots and pieces of ground to the center of the block extending along the street or avenue, the distance improved, or to be improved, according to the area of the lots or pieces of ground, without regard to the buildings or improvements thereon and the amount

to be paid by each property holder shall be determined by dividing the expense of the construction of the proposed sewer among all the property holders in front of whose property the sewer is to be constructed. The amount to be assessed against each property holder shall be in proportion to the number of square feet owned by him, to the entire number of square feet assessed for the expense of the construction of such sewer. Provided, however, that whenever any of the property to be assessed for the construction of a sewer shall not abut directly upon the street, upon which the proposed sewer is to be constructed, or upon any other street through which a sewer has been constructed, then an estimate shall be made of the probable expense of connecting said non-abutting property with the proposed sewer and the amount of such probable expense of connecting said property which is in excess of the expense of connecting directly abutting property with said sewer, shall be deducted from the assessment made against said non-abutting property and the amount so deducted shall be added to the entire probable expense of constructing the proposed sewer before the assessment therefor shall be made. And so much of probable expense of connecting non-abutting property with said sewer which is in excess of the probable expense of connecting directly abutting property with such sewer shall be assessed equally against all the property assessed for the construction of said sewer."

The suit is brought to restrain the City Treasurer of the City of Cheyenne from selling certain real estate of plaintiff abutting upon 21st Street in said city, to satisfy a special assessment levied to pay the cost of constructing a sewer along said street, and in front of plaintiff's said property. Omitting the purely formal allegations of the petition, it is alleged in substance, that on September 1, 1903, the city council, upon petition and by order or resolution, attempted to provide for the construction of a sewer along said street from its junction with Evans Street to its junction with Pebrican Street; that thereafter the city council attempted to levy a special assessment upon the prop-

erty · abutting upon said street along the line of the proposed sewer, for the purpose of paying for its construction; and that plaintiff's property was assessed therefor in the sum of $39.52. It is further alleged that plaintiff's property is a corner lot fronting on 21st Street for a distance of 66 feet, and on Evans Street for a distance of 132 feet, and that three houses are located on the lot; that under the laws and the charter of the said city, in force in 1886, the said city in that year constructed a sewer along Evans Street from its junction with 17th Street to its junction with 24th Street, and did levy a special assessment upon the property abutting on Evans Street along the line of the Evans Street sewer, and for that purpose did assess and levy upon corner lots fifty per cent more than upon other lots in the same block; that the then owner of plaintiff's property paid the assessment for the said Evans Street sewer levied upon said property, and afterwards, about the year 1889, caused the houses located thereon to be connected with such sewer; that said houses have ever since that time been connected with that sewer, which is and has been at all times sufficient for said property; and that said property does not have any need of or use for other sewer connection. It is further alleged that in making the special assessment the city council did not consider or discuss the question as to whether or not the property of said plaintiff or any property would be benefited by the construction of said sewer, or whether or not the benefits to any property would equal the amount for which it was to be assessed; and that said sewer is not of any value, use or benefit to said plaintiff and does not in any way add to, benefit or improve his said property.

It is further alleged that on January 26, 1904, the plaintiff filed his written protest and objections against the action of the council in levying said special assessment, and a copy thereof is attached to and made a part of the petition.

A general demurrer was filed to the petition and upon the hearing thereof an order was entered reserving for the

decision of this court eight separate questions. The first six are similar in form, each one presenting the inquiry whether Chapter 7 of the laws of 1903 contravened the provisions of a specified section of the constitution. In the order of the questions the sections of the constitution thus referred to are, respectively, Sections 6, 7, 28 and 33 of Article I, Section 1 of Article XV, and Section 27 of Article III. The seventh question inquires whether the said act was a valid and legal statute; and the eighth question is as follows: "Is the particular assessment complained of in plaintiff's petition under the issues raised in this cause constitutional and valid?"

The provisions of the constitution particularly referred to in the reserved questions are as follows:

"No person shall be deprived of life, liberty or property without due process of law." (Art. I, Sec. 6.)

"Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." (Art. I, Sec. 7.)

"No tax shall be imposed without the consent of the people or their authorized representatives. All taxation shall be equal and uniform." (Art. I, Sec. 28.)

"Private property shall not be taken or damaged for public or private use without just compensation." (Art. I, Sec. 33.)

"All lands and improvements thereon shall be listed for assessment, valued for taxation and assessed separately." (Art. XV, Sec. 1.)

"The legislature shall not pass local or special laws in any of the following cases, that is to say: For * * * incorporation of cities, towns or villages; or changing or amending the charters of any cities, towns or villages; * * * for the assessment or collection of taxes * * *. In all other cases where a general law can be made applicable, no special law shall be enacted." (Art. III, Sec. 27.)

In connection with the above mentioned provisions our attention has been called in the brief and upon argument

to the provisions of Section 1 of Article XIII of the Constitution, which counsel for plaintiff contends is necessary to be considered in determining the validity of the statute aforesaid. That section is as follows:

"The legislature shall provide by general laws for the organization and classification of municipal corporations. The number of such classes shall not exceed four (4), and the powers of each class shall be defined by general laws, so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters or the general laws of the territory may abandon such charter and reorganize under the general laws of the state."

Counsel for plaintiff contends that the statute in question violates each of these constitutional provisions.

1. We will first consider the point raised with reference to Section 27 of Article III, which prohibits local or special legislation in certain enumerated cases, and also in all other cases where a general law can be made applicable, and Section 1 of Article XIII, which requires the enactment of general laws for the organization and classification of municipal corporations, provides that the number of such classes shall not exceed four, and that the powers of each class shall be defined by general laws, so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. In this connection it is earnestly contended that the act is a special law upon a subject within the constitutional inhibition, that it illegally adds a class of municipal corporations to the four classes authorized, which it is argued, had previously been provided for, and that cities incorporated under special charter constitute a single class, governed as such by that provision of the section last above referred to requiring all members of the same class to have the same powers and be subject to the same restrictions, under any law passed subsequent to the taking effect of the constitution.

At least two separate general classes of municipal corporations, viz.: towns, and cities of the first class, have been provided for by general laws, prescribing the method of their organization, their powers, and regulating the government thereof respectively. Other laws have from time to time been enacted conferring certain powers upon all cities or all municipal corporations, however organized or incorporated, and some have been passed applicable to municipalities having a prescribed population, with reference to particular features of municipal government or control. But whether such laws provide for the organization of a distinct class or classes within the sense of the constitutional authority for establishing four classes need not be considered. The argument that the authorized four classes are exceeded by the act in question proceeds upon the theory that municipal corporations under special charter constitute one of the four permitted classes. Without them it is not contended that four general classes had been established or provided for prior to the passage of the act in question.

At the time the constitution was framed and adopted as well as when it went into effect upon the admission of the state, there were five municipal corporations in existence under a special charter which had been granted in each case before any restriction had been placed upon the legislative power in that respect. The validity of those charters has never been questioned. The existence of those corporations was recognized by Section 1 of Article XIII, the closing sentence thereof permitting them to abandon their charter and reorganize under the general laws. When the constitution went into effect the only general law providing for the organization of a municipal corporation was one for the incorporation of towns with a resident population of not less than 300 in a territory not exceeding two square miles. In 1895 the required population was reduced to 150, and the area allowed to so incorporate was increased to three square miles. The evident purpose of the act was to provide a municipal government for places containing a relatively small population. Not only the small number of

people required to so incorporate indicates this, but also the method of government and the powers granted. When, if ever, the legislature would enact further general laws upon the subject, under which every specially chartered city could appropriately reorganize, could not be known by the framers of the constitution, and, indeed, it was not until 1895 that a further law was enacted, the one for cities of the first class.

It is beyond question, we think, that it was not intended by the constitution to abrogate any special charter previously granted. So far as the constitution is concerned the abandonment of such charters was not made compulsory at any time, and there has been no legislation requiring it. The act providing for cities of the first class allows, without requiring, a city or town under special charter, having the requisite population, to reorganize under its provisions; and but one—Sheridan—has taken advantage of such permission, and that did not occur until 1907, after the passage of sundry amendments at the session of 1907 to the original act of 1895.

We think it reasonably clear, also, that the four authorized classes were not intended to include municipal corporations under special charter then in existence. No further special charters could of course be granted. But in limiting the establishment of municipal corporations under general laws to four classes, it is evident that the convention did not have in mind as one of such classes those cities or towns then under special charter while remaining in that condition. We think the authority is plainly granted to provide for four classes exclusive of, or in addition to, the corporations then existing under special charter. The command upon and the authority of the legislature is to provide by *general laws* for the organization and classification of municipal corporations, the number of *such* classes, that is to say, the classes whose *organization* and *classification* shall be provided for by general laws, not to exceed four; and the powers of each class, which we take to mean the powers of each of the four classes so provided for by

general laws, are to be defined by general laws, so that each
corporation of any *such* class shall have only such powers
and be subject to only such restrictions as all in the same
class. The eixsting corporations under special charter were
not established or provided for by general laws, nor by the
authority of the section under consideration. They, how-
ever, each continued under their charter by a clear implica-
tion of the section, as well as by that provision of the
schedule continuing in force all laws of the territory not
repugnant to the constitution. The restriction of the con-
stitution concerning special legislation was directed against
the state legislature, and clearly did not abrogate previously
enacted valid laws.

As above indicated, so far as that provision of Section
1 of Article XIII is concerned which requires the powers of
each class to be so defined that no member of a class shall
have any powers or be subject to any restrictions other than
all in the same class, it expressly applies only to the four
classes authorized by the section to be organized under gen-
eral laws, and not to existing specially chartered cities or
towns. The latter, in a general sense, may constitute a
separate class because of their similarity in the fact that
they are primarily governed by a special charter, and they
and their charters are controlled by the prohibition of local
or special legislation, but the particular provision of Article
XIII above alluded to does not affect them.

We hold, then, that the limitation upon the number of
classes and the restriction upon the classification contained
in said section 1 of Article XIII do not apply to or control
legislation respecting cities or towns legally existing under
special charter when the constitution took effect, during the
continuance thereof under such charters. The only limita-
tion or restriction, so far as classification is concerned, are
the provisions prohibiting the enactment of local or special
laws, or requiring general laws upon the subject.

The same conclusion under practically similar consti-
tutional provisions has been reached by the courts of other
states, where special charters had previously been granted.

(Rutherford v. Heddens, 82 Mo. 388; Rutherford v. Hamilton, 97 Mo. 543; Murnane v. St. Louis, 123 Mo. 479; Covington v. East St. Louis, 78 Ill. 548; Etting v. Hickman, 172 Mo. 237, 256; Brown v. Denver, 7 Colo. 305; People v. Londoner, (Colo.) 22 Pac. 764; Ulbrecht v. Keokuk, (Ia.) 97 N. W. 1082; Haskel v. Burlington, 30 Ia. 232; Johnson v. Milwaukee, 88 Wis. 383, 60 N. W. 270; Appleton W. Co. v. Appleton, 116 Wis. 363, 93 N. W. 262; Butler v. Lewiston, (Idaho) 83 Pac. 234.)

A more serious question is whether the statute is a local or special law, and as such in conflict with Section 27 of Article III of the Constitution, prohibiting that character of legislation for the incorporation of cities, towns or villages, or changing or amending the charters thereof. Unquestionably the charter of a municipal corporation cannot under the constitution be amended by a local or special law. It may, however, be amended in effect by a general law. Whether a particular statute is or is not a general law is often a question difficult of determination, but the general rules controlling such determination are quite well established. That a reasonable classification of objects of legislation or localities may be resorted to without rendering an act objectionable as a local or special law, within the meaning of the constitutional inhibition of such laws, is a general principle too well settled to admit of present controversy. The quetsion in each case must be whether the classification is a proper one. In the case of Standard Cattle Co. v. Baird, 8 Wyo. 144, this court without further comment accepted as accurate a statement of the principle governing legislative classification found in a case cited by the party attacking a statute there under consideration, viz:

"The characterisics which serve as a basis for classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation, and

the objects or places excluded.   The marks of distinction
on which the classification is founded must be such in the
nature of things as will, in some reasonable degree, at least,
account for or justify the restriction of the legislation."
(State v. Hammer, 42 N. J. L., 439.)   And also the follow-
ing from another case cited by the same party: "Every law
is special which does not embrace every class of objects
or persons within the reach of statutory law, with the
single exception that the Legislature may exclude from the
provisions of a statute such classes of objects or persons
as are not similarly situated with those included therein, in
respect to the nature of the legislation."   (Edmunds v.
Herbrandson, 2 N. Dak., 270.)   ·

In a recent work where the question is well considered
it is said: "A general law, as distinguished from a local or
special law, is one that embraces a class of subjects, and
does not exclude any subject or place naturally belonging
to the class, when considered in its relation to the subject
of classification.   In other words, a law framed in general
terms, restricted to no locality, and operating upon all of a
group of objects, which, having regard to the purpose
of the legislation, are distinguished by characteristics suf-
ficiently marked and important to make them a class by
themselves, is not a special or local law, but a general law."
And again: "A law is not local or special or lacking in
uniform operation, merely because it does not include in
the scope of its operation every locality or person in the
state.   *   *   *   The classification of localities and per-
sons, for various legislative purposes, is not prohibited,
so long as such classification has that basis of reasonable-
ness which distinguishes classification from arbitrary dis-
crimination."   (Gray's Limitation of Taxing Power &c.,
Sec. 1728.)   ·

In Lewis' Sutherland Statutory Construction it is said:
"The state contains a great variety of subjects of legis-
lation, each requiring provisions peculiar to itself.   Generic
subjects may be divided and sub-divided into as many classes
as require this peculiar legislation.   *   *   *   Nearly

every matter of public concern is divisible, and division is necessary to methodical legislation. A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." (Vol. 1, Sec. 195.)

In Johnson v. Milwaukee, 88 Wis., 383, the following rules of classification are stated: (1) "All classification must be based upon substantial distinctions which make one class really different from another." (2.) "The classification adopted must be germane to the purpose of the law." (3) "The classification must not be based upon existing circumstances only." (4) "To whatever class a law may apply, it must apply equally to each member thereof."

It is well settled that classification of cities for various purposes of municipal government by population is proper, if such classification appears to be reasonable and not arbitrary, and the fact that only one city is within the class at the time does not of itself necessarily render an act special. (Givens v. Hillsborough Co., (Fla.), 35 So., 88; Evansville Ac. Co. v. Terre Haute, (Ind.), 67 N. E., 686; Kirch v. Louisville, (Ky.), 101 S. W., 373; Gray's Lim. Tax. Power, Sec. 1738, and cases cited.) The matter of local improvements is held to constitute a proper subject for classification. (1 Lewis' Suth. Stat. Construction, Sec. 211, and cases cited; L'Hote v. Milford, 212 Ill., 418.)

In a Minnesota case it is said in explanation of the rule that the characteristics which form the basis of the classification must be germane to the law, that "legislation for a class, to be general, must be confined to matters peculiar to the class. There must be an evident connection between the distinctive features to be regulated and the regulation adopted." And among other rules it was laid down as beyond question that, "if the basis of the classification is valid, it is wholly immaterial how many or how few members there are in the class." And further: "The character of an act as general or special depends on its substance, and not on its form. It may be special in fact although general in form, and it may be general in fact although special

in form. The mere form is not material." (State v. Cooley, 56 Minn., 540.) In a later case it was said by the same court in restating the general principles controlling the matter of classification, that when population is the basis thereof, the subject matter must be such as suggests a necessity for the legislation arising out of the fact of population. (State v. Brown, 106 N. W., 477.)

In an Indiana case cited by counsel for plaintiff it is said: "The reason for the classification must inhere in the subject matter, and the same must be natural, not artificial. Under this rule, neither mere isolation nor arbitrary selection is proper classification." (Town of Longview v. Crawfordsville, 73 N. E., 78.)

Much reliance, in opposition to the validity of the statute, is placed by counsel upon the Ohio cases of Jones v. State, 66 O. St., 75, and State v. Jones, id., 453. We think there is nothing in those cases opposed to the principle of reasonable classification, nor, as we read the cases, was the mere fact that there was but one city to which the statute applied the controlling consideration. But though one place only could come within the statute, its real infirmity seems to have been that the subject of the legislation was not such as required or justified so limited a classification or operation. These cases are well reviewed in the Kansas case of Parker-Washington Co. v. Kansas City, 85 Pac., 781, and the fact which distinguish them from the case then before that court and other cases where classification has been upheld are pointed out. In the Kansas case a statute classifying cities on a basis of population was under consideration, the statute providing that in cities of the first class having a population of over 50,000 the expense of improving streets should be met by the issuance of special tax bills against the property chargeable with the cost of such improvements. The act was held valid, although Kansas City was the only city in Kansas then having over 50,000 inhabitants. The court stated the following as a rule by which to test the validity of the act:

"Whether the act in question is to be regarded as special, and whether its operation is uniform throughout the state depend upon whether population affords a fair basis for the classification of cities with reference to the matters to which it relates, and whether the result it accomplishes is in fact a real classification upon· that basis, and not a designation of a single city to which alone it shall apply, under the guise of such classification." Referring to the fact that only one city had a population sufficient to come within the purview of the act, the court said that such fact was not determinative of the matter, "for it is not only conceivable and probable, but practically inevitable that other cities in the state will in time attain that size."

In Pennsylvania it was said with reference to the classification of municipal corporations, that the very object thereof "is to provide different systems of government for cities differently situated in regard to their municipal needs. It was recognized that cities varying in population will probably vary so greatly in the amount, importance and complexity of their municipal business, as to require different officers and different systems of administration. Classification therefore is based on difference in municipal affairs, and so long as it relates to and deals with such affairs, the questions of where the lines shall be drawn, and what differences of system shall be prescribed for differences of situation, are wholly legislative. What is a distinction without a difference is largely matter of opinion. No argument, for example, could be more plausible than that there is no real difference in municipal needs, between a city of 99,000 and one of 100,000 population. It is a sufficient answer that the line must be drawn somewhere, and the legislature must determine where. So long as it is drawn with reference to municipal and not to irrelevant or wholly local matters, the courts have no authority to interfere." (Com. v. Moir, 199 Pa. St., 534.)

The doctrine declared in Wisconsin in the case of Johnson v. Milwaukee, *supra*, that legitimate.classification cannot be based upon existing circumstances only, was explained

in the later case of Bloomer v. Bloomer, 128 Wis., 297, because of its having been wrongly applied in Battles v. Doll, 113 Wis., 357, and it was said to apply only to "legislation directed solely to existing localities characterized presently by the special circumstances supposed to warrant the special treatment: legislation which necessarily contemplates a class presently determinable as to membership, and unchangeable in that regard in the future." In Illinois, the court held valid an act which it said classified the cities and villages into two classes, one class having a population of 50,000 or less, and the other a population of 50,000 or more, and gave to the latter class power to adopt ordinances for making local improvements by special assessments or special taxation without a petition of property owners and denied that power to the former class. It was held that the classification was grounded upon a distinction in the circumstances and conditions of cities and villages falling within the two different classes. The court said as to classification of municipalities generally:

"A law is not to be denominated local simply because it may operate only in certain of the municipalities of the state, if, by its terms, it includes and operates uniformly throughout the state under like circumstances and situation. The cities and villages of the state may be classified for purposes of legislation on the basis of population, if such basis has some reasonable relation to the purposes and objects to be attained by the legislation and in some rational degree accounts for the variant provisions of the enactment. A classification of cities, towns and villages by population cannot be arbitrarily adopted as a ground or reason for investing some of them with powers denied or not granted to others, if, though there be difference in population, there is no difference of situation or circumstances of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and objects to be attained by the statute." (L'Hote v. Milford, 212 Ill., 418.)

Without further reviewing the authorities it may be said that there exists a substantial agreement with reference to the general principles controlling the theory of permissible classification. An apparent difference of opinion is found occasionally in the application of the principles to particular statutes. Divergent views are to be expected regarding the reasonableness of a classification, for often it is difficult to draw the line between what is and what is not reasonable in that respect. Some regard therefore ought to be had for the legislative determination of a matter of that nature, as that branch of the government must be supposed to have acted from proper motives, and with a fair knowledge of conditions and necessities. Hence the abuse of legislative discretion as to classification should be reasonably clear to justify interference by the courts.

Guided by the general principles above set forth we will now proceed to consider the specific objections on the ground of special legislation urged against the statute, first recalling its pertinent provisions. The object of the legislation was the designation of the district to be charged with special assessments for the construction of sewers, and the manner of apportioning the same. The class provided for to which the law was to become applicable was described as "every city * * * heretofore incorporated under a special charter, * * * having a population of not less than ten thousand inhabitants, to be determined by the last preceding United States census, and having power to make special assessments for the construction of sewers."

The City of Cheyenne, it is conceded, was the only city that presently came under the operation of the act, and it is contended that the terms of the classification employed demonstrate that the act was passed solely with reference to that city, for the purpose of amending its charter, and that the class was so described as to prevent any other city from coming within it.

In support of that contention it is argued that the word "heretofore" qualifying the words "incorporated under a special charter" prevents any further accession to the class.

But it is evident that "heretofore" adds nothing whatever to the limitation of the class. The only cities under special charter were those theretofore incorporated, and no other city was permitted by the constitution to be so incorporated thereafter. Had the word been omitted the class would have been precisely the same.

Again, it is argued that the provision for determining the population "by the last preceding United States census" had the effect of presently determining the entire membership in the class. This position is based upon the theory that the census referred to was the one last preceding the passage of the act, viz: the census of 1900. Were it doubtful whether the census last preceding the passage of the act, or the one last preceding a particular assessment, was intended and the former construction would defeat while the latter would sustain the statute, the latter, under a well known rule of interpretation, would be adopted. However, we do not think that the meaning of the expression is at all doubtful. It refers not to the census last preceding the enactment of the statute, but the one last preceding any date which might become material in ascertaining whether any particular city had come within the statute. The same provision is very generally employed in statutes of like character for the purpose of prescribing the manner of ascertaining the population, and though the construction here insisted on has not often been suggested, it has usually been assumed that the provision applies to the future and does not limit the evidence of population to a census preceding the date of the statute. (See R. R. Co. v. Terre Haute, (Ind.), 67 N. E., 676; L'Hote v. Milford, 212 Ill., 418; Johnson v. Milwaukee, *supra.*) So far as we have been able to discover, wherever this question has been raised it has been decided adversely to the contention here made.

The question was raised in Minnesota in relation to the words "at the last preceding state census" in an act conferring a certain power upon a city having more than 50,-000 inhabitants. It was held that the words "last preceding"

referred to the state census which immediately precedes
in point of time the action of the council. (State ex rel.
v. Dist. Court, 84 Minn., 377.) In State ex rel. v. Rogers,
97 Minn., 322, 106 N. W., 345, a like construction was
given to the provision: "In determining at any time to
which counties this act shall apply reference shall be had to
the United States census last taken." And it was held not
unreasonable to provide for reference only to the United
States census.

In Cotting v. Kansas City Stockyards Co., 79 Fed., 679,
an act was under consideration which defined a public stock-
yard as one which for the preceding 12 months shall have
had an average daily receipt of a certain number of live
stock. The word "preceding" was held not to mean an-
terior to the passage of the act, but that a stockyard came
under the law which had maintained for a period of 12
months the stated volume of business; and the act was held
to be general. (See also Town &c. v. Jenkins, 40 Barb.,
574; Nelson v. Edwards, 55 Tex., 389.)

The objection most strongly urged against the validity
of the classification relates to the provision confining the
operation of the act to cities incorporated under a special
charter having a population of 10,000 inhabitants. It is
reasonably clear that specially chartered cities are entitled
to be regarded as in a class separate and distinct from
those organized under general laws. The fact must have
been recognized that the provisions of the special char-
ters might be radically different in many respects from
those found in the general laws for the organization of
municipal corporations, and that unless they could be leg-
islated for as a distinct class much confusion in their mu-
nicipal government might result. As already stated they
cannot be legislated for except by a law which is general
as distinguished from local or special. But as a law ap-
plicable to a valid separate class under the general laws
is general and not special, so it would seem that a law ap-
plicable alone to municipalities existing under special char-

ter, if otherwise unobjectionable, must be regarded as general.

In Wisconsin it was said: "It seems clear that an act of the legislature which should confer a new power upon all the cities in the state which are acting under special laws, without any exception, would be a general law." And further: "If it is competent to legislate at all for cities acting under special charters, it should be competent to make some classification of them suited to their different conditions and necessities. All cannot use with benefit powers which would be of great advantage to some. A law which should provide for one case only, in a proper case, should be held to be a general law." (Johnson v. Milwaukee, *supra*.) In Missouri it has uniformly been held that the charters of cities, existing under laws passed prior to the constitution which contained the prohibitory provisions with reference to special laws, and also the provision with reference to establishing four classes under general laws, may be amended by general laws, based on population, applicable alone to such specially chartered cities; and further that a law referring to them by population is a general law. (Rutherford v. Heddens, *supra;* Rutherford v. Hamilton, *supra;* Murnane v. St. Louis, *supra*.) While this rule was adhered to in the case last cited, a law was held invalid which was made applicable to all cities with a population of 300,000 inhabitants or over, and provided for assessing the cost of improving streets upon adjoining property, but contained the provision that such tax should be levied, collected and paid "in the manner and at the time *now* provided by law and charter of said cities for the levy, collection and payment of special tax bills." The ground of the invalidity was not that it applied to specially chartered cities, but that as applicable to all cities, those under general law as well as those under special charter, it made two classes out of cities of the first class under general law— cities of the first class consisting of those having 100,000 inhabitants or more, and that the assessments were to be levied, collected and paid in the manner and at the time

"now" provided by law or charter, &c. That is to say, the word "now" prevented any future accession to the class, and the division of the cities of the first class was held to be a breach of the constitutional command that all municipal corporations of the same class organized under the general laws shall possess the same powers and be subject to the same restrictions, as well also the further mandate that the number of such classes shall not exceed four. It is clear from the decision in that case we think that had the act applied only to cities acting under special charter the classification by population would not have been held improper.

In State ex rel. v. Trustees, 121 Wis., 44, it was held not invalid, where cities have been classified by population, to subdivide one of the classes into those having and those not having a paid police department, by an act providing for a pension fund for police officers in those having such paid department. In Schintgen v. LaCrosse, 117 Wis., 158, a reassessment law general in its terms and applicable to every city in the state operating under a special charter was held not a special law, although it provided for such reassessment where there had been a special assessment for street improvements which was invalid because of the work having been done without authority of law, or for failure to make a proper assessment or to observe any provision of law, &c.

The Missouri cases of Rutherford v. Heddens and Rutherford v. Hamilton, above cited, are peculiarly in point because of the similarity not only of the constitutional provisions, but of the statute considered. In those cases the validity of an act was questioned which authorized cities acting under special charters and then or thereafter containing more than 30,000 and less than 50,000 inhabitants, to establish a system of sewerage, &c.; and it seems also that the act provided for the levying of special assessments. We understand from the opinions in the two cases that St. Joseph was the only city presently coming under the provisions of the act. It was held that the fact that the

statute applied to but one city did not render it a special law; that the act was not objectionable for a classification of cities under special charter by population, and that such cities were not affected by the constitutional provisions as to the organization of four classes by general law.

Counsel for plaintiff suggests that a contrary view was taken in Iowa as to the right to classify by population or otherwise cities acting under special charter, although it is conceded that such cities are held in Iowa to constitute a separate class which might be legislated for without violating the prohibition of special legislation. The precise point whether it is permissible in that state to classify such cities by population for different purposes does not seem to have been directly passed upon, so far as the cases have been called to our attetnion. But we do not interpret the Iowa cases that have come to our notice as denying the right to make such classification. It is true that in the case of Haskell v. Burlington, *supra,* wherein the act assailed was held valid, it was said that it applied to all cities incorporated under special charter. However, the act which the court was considering applied its provisions to all cities and towns "heretofore incorporated under special acts and charters, and which do not now possess the right to sell personal or real property for the collection of delinquent taxes, including special rates and assessments," and authority to sell property for such delinquent taxes was thereby conferred. It does not seem to have been .supposed by the court that the provision limiting the operation of the act to cities not then possessing the right granted by the act constituted an improper classification. Of course it was not necessary to confer the power upon cities already having it, and the others were placed upon the same footing. However, in Lytle v. May, 49 Ia., 224, although the particular question now under discussion was not considered, and apparently was not suggested, an act was held valid upon an objection that it was unconstitutional, which provided "that any city in this state containing 5,000 inhabitants, whether organized under a special charter, or

the general act for the incorporation of cities and towns, may establish a superior court as hereinafter provided, which, when established, shall take the place of the police court of such city." In that act cities acting under special charter were classified by population as well as other cities and towns, and it would seem that had it been deemed questionable in that respect the matter would have been raised or at least considered.

The act here under consideration appears to be general in its terms, so that the question is whether the classification is reasonable and proper upon the principles governing such a matter. We believe the only reasonable conclusion to be upon principle and authority, not only that a law is not rendered local or special because it is made applicable alone to cities incorporated under special charter, but that such cities may be legally classified by population if the same be reasonable in order to render legislation suited to the different conditions and necessities of such cities. That such a difference in conditions and necessities may exist is illustrated by the differences alone in population between cities acting under special charter at the time of the passage of the act of 1903, ascertained by reference to the last preceding United States census. One of such cities had then a population of more than 14,000, another less than 800, and the others ranged between 5,200 and 8,200. It is not difficult to conceive that what might be deemed advisable or proper as to one or more of such cities in relation to the matter of raising funds to defray the cost of constructing sewers might be regarded as manifestly improper and inadvisable as to other of such cities having a less or greater number of inhabitants. Since it is not required by the constitution that a law referring to cities acting under special charter should treat them all as a single or indivisible class, it follows that the only test by which the act in question is to be tried is whether the classification is reasonable, having regard to the subject matter of the legislation.

Concerning the classification by population which was adopted by this act, it does not appear to us to be unreason-

able to suppose that a necessity for the particular legislation might exist in cities having 10,000 inhabitants or over, and not in substantially smaller communities. It is true that a city with 9,900 or 9,000 inhabitants would not seem to present any difference in situation in that particular, but, as remarked in a Pennsylvania case above cited, a line must be drawn somewhere, and hence the legislature must be permitted some discretion in marking the precise line of division; otherwise it would be difficult to uphold any classification by population. In reference to smaller incorporated communities the rule usually adopted in our statutes has been to require the expense of constructing sewers to be defrayed by means of general taxation, or through the issuance of corporate bonds; and the bonds when issued of course become a charge upon all taxable property within the corporate limits. The classification by population in this statute does not impress us as arbitrary or without a reasonable basis.

Finally, it is insisted that the act is rendered local and special by that provision applying it to those cities acting under special charter and having the prescribed population "having power to make special assessments for the construction of sewers." To state the proposition somewhat differently it is contended that the act is localized by excluding from its operation cities not having the power to make special assessments for the construction of sewers, although they might be acting under special charter and have the prescribed population. It occurs to us that the provision with reference to the power to make special assessments need not necessarily be regarded as a means of classification. Without this provision the act would seem to have applied to such cities only as did have the power to make such assessments. The act itself confers no power to make them primarily nor does it seem that it was intended to do so. Had the act omitted the provision and provided simply that whenever special assessments for the construction of sewers are levied by cities acting under special charter having 10,000 inhabitants, they should be levied in

the manner specified in the act, it would seem that the act would have applied only to the included cities having the power to levy such special assessments.

But treating the provision as a means of classification we have reached the conclusion that it is not unreasonable merely because Cheyenne is the only one of the included cities which then had the power to make such special assessments. The fact is that Cheyenne was the only specially chartered city, regardless of the number of inhabitants, which was then possessed with the power of special assessments for the purpose mentioned. To say that a law can not be deemed general regulating the levying of special assessments in cities having the power to levy the same would be to deny the legislative power to legislate at all upon the subject so far as Cheyenne is concerned, without first granting to other cities under special charter, under some general law, a right to make such special assessments. We do not think that the law requires the adoption of such a rule. It would amount to saying that if but one city comes within the class, then the law must be deemed local and special; but, as has already been shown, that is not the law, that is to say, the test is not how many or how few belong to the class.

As we think the act must be viewed upon the principles controlling the question of classification, the entire membership in the class was not presently determined by the classification adopted, but under its terms any city operating under special charter would come within its provisions whenever it should attain the prescribed size and had the power to levy the kind of assessments referred to. The act is not special but is a general law, and is, therefore, not in conflict with Section 27 of Article III of the Constitution.

2. We next proceed to consider whether the act contravened the other constitutional provisions referred to. It is too late to question as a general proposition the right to levy special assessments upon abutting or adjacent property specially benefited to defray the cost of municipal street improvements. We conceive it to be well settled as a general

rule that special assessments are levied and apportioned as
an exercise of the taxing power. (People v. Mayor, 4 N.
Y. 419; Gray's Lim. Taxing Power, Secs. 1838-1841; Ham-
ilton Special Assessment, Chap. 1.) And we accept as
fundamental the principle that they are levied upon the
theory of special benefits accruing to the property assessed.
In the leading case of People v. Mayor, *supra*, it is said
that the change in apportioning the burden of the expense
among a few instead of raising the necessary funds by gen-
eral taxation "was obviously made for the purpose of avoid-
ing the injustice of general taxation for a special local ob-
ject, the benefit of which extended only to a portion of the
inhabitants of the city. It (the statute) professed to ap-
portion the taxes according to the maxim, that he who re-
ceives the advantage ought to sustain the burthen, and to
exact from each of the parties assessed no more than his
just share of the burthen, according to this equitable rule
of apportionment. * * * It seems impossible to deny
that in the theory of their apportionment they are far more
equitable than general taxation for the purpose they are de-
signed for." And in a more recent case in another state,
it was said in substance, that the object of local assessments
is to produce equality in taxation; that the doctrine on
which they are based is more equitable and far more just
and satisfactory to individuals and the public, when rightly
understood, than general taxation for the same purpose;
that the expenditure of the money collected by local as-
sessments goes directly to the improvement of the streets
and betterment of the property in the assessed neighbor-
hood, while in general assessments the money is expended
on favored portions of the municipality, if not entirely dis-
sipated or wasted, before it reaches the intended improve-
ment, remote from the property of the bulk of the tax-
payers, who derive no immediate benefit whatever from it;
and that "if there are any taxes with approximate uni-
formity and equality it is the assessments for local improve-
ments, which pass almost directly with little or no expense
for collection from the taxpayer into the very improvement

for which they are levied. The constitutionality of such laws is, therefore, beyond question, for they are not only equal and uniform in their operation, but they furnish a strong incentive to local improvement, and are thereby promotive of pubic welfare." (Parkersburg v. Tavenner, 42 W. Va. 486.)

Judge Dillon, in his treatise on the law of Municipal Corporations at Section 752 (4th Ed.) says: "The expense of making local improvements, such as grading and paving or otherwise improving streets and sidewalks, constructing drains, sewers, and the like, is very generally met, in whole or in part, by local assessments authorized to be made upon persons or property benefited, or deemed to be benefited. Legislation of this character, both in respect to its justice and its constitutional validity, has been extensively discussed by the judicial tribunals of nearly every state in the Union. The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it; and the many cases which have been decided fully establish the general proposition that a statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned and to assess the expense upon the property which, in the opinion of the designated tribunal or officers, shall be specially benefited by such street or improvement in proportion to the amount of such benefit, or upon the abutters in proportion to benefits or frontage or superficial contents, is, in the absence of some special constitutional restriction, a valid exercise of the power of taxation. Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is according to the present weight of authority considered to be a question of legislative expediency,

unless there is some special restraining constitutional pro-
vision upon the subject. Whatever limitation there is upon
the legislative power of taxation (which includes the power
of apportioning taxation) must be found in the nature of the
power, and in express constitutional provisions."

With reference to the contention that the statute in ques-
tion violated Section 1 of Article XV of the Constitution
declaring that "all lands and improvements thereon shall be
listed for assessment, valued for taxation and assessed sep-
arately," and Section 28 of Article I declaring that "all
taxation shall be equal and uniform," but little comment is
necessary. It is generally agreed by the authorities that
such provisions have reference only to general taxation and
do not restrict the power of levying special assessments such
as we are here considering. Judge Cooley states: "It is
safe to assume, as the result of the cases, that the constitu-
tional provisions refer solely to state taxation, or when
they go further, to the general taxation for state, county
and municipal purposes; and though assessments are laid
under the taxing power, and are in a certain sense taxes,
yet that they are a peculiar class of taxes, and not within
the meaning of that term, as it is usually employed in our
constitutions and statutes." And that author states that
such assessments may, therefore, be laid on property spe-
cially benefited, notwithstanding such constitutional restric-
tions as that taxation shall be equal and uniform and that
all property shall be taxed in proportion to its value, and
general provisions of like character. (Cooley on Taxation,
3rd Ed., 1201; see also 25 Ency. L. 1174; Gray's Lim. of
Taxing Power, Sec. 1839; 28 Cyc. 1105.) It is sometimes
held as to the matter of uniformity that though the consti-
tutional provision requiring it might cover special assess-
ments, they are to be regarded as uniform throughout the
particular district assessed and, therefore, not in violation of
the constitutional principle.

The chief contention in opposition to the validity of the
statute with respect to its provisions regulating sewer as-
sessments is that it violated Section 6 of Article I of the

Constitution, declaring that "no person shall be deprived of life, liberty or property without due process of law," and Section 33 of Article I, declaring that "private property shall not be taken or damaged for public or private use without just compensation." The particular ground of the objection in this connection is that the statute discards the theory of benefits as the foundation for the assessment, and requires the assessment to be made according to the area of the lands within the prescribed district without inquiry as to benefits.

Before proceeding to consider this objection it should be stated that, as presented for present decision, the question is limited to the bare proposition that the statute upon its face is unconstitutional and void. The procedure resulting in the particular assessment complained of is not set out in the petition, nor is there any averment respecting the ordinance or ordinances, if any, which had been adopted with reference to the construction of the sewer referred to, or sewers generally, or providing for the levying of assessments for such purposes or this particular assessment. It is alleged generally, it is true, that the city council levied the assessment without considering or discussing the question of benefits. But upon this hearing we are only concerned with that allegation so far as our consideration of the validity of the statute may be affected thereby. Only constitutional questions may be presented for a decision of this court in a proceeding of this kind; and we would not be inclined to consider the validity of an assessment from a constitutional standpoint solely upon an allegation that the same was levied by the city council according to area without regard to benefits in the absence of a showing as to the procedure adopted and followed in levying the assessment, since it is clear upon the authorities that the mere fact that a special assessment for a street improvement was levied according to area, frontage or value would not necessarily disprove the consideration of benefits; and we assume that the allegation of the petition negativing the consideration of benefits by the council goes no further than as an

assertion that the assessment was levied upon the district and in the manner prescribed by the statute.

It is, however, alleged that the owner of the property described in the petition had previously paid an assessment for the construction of another sewer along and through Evans Street upon which the plaintiff's property also abuts; that the property has been connected with said sewer, which furnishes all the sewer advantages needed by the property. Therefore, it is alleged that plaintiff's property is not benefited by the proposed sewer, and that being the only specific allegation respecting lack of benefit, we shall assume that to be the ground upon which it is charged in the petition in a general way, that the sewer for which the present assessment was laid does not benefit the property of plaintiff. There is nothing in the petition to show that the property is differently situated from any other property along the line of the sewer in question, except its connection with the sewer previously constructed upon another street.  Again, it is to be observed that, so far as the question is now before this court, the only matter we have any authority to consider in relation to the facts alleged as to the Evans Street sewer and the advantage it conferred upon plaintiff's property is whether such facts render the assessment here assailed invalid from a constitutional point of view.

If the fact of such previous assessment was the only ground for questioning the constitutionality of the statute or the assessment, there would be little difficulty in disposing of the question.  It is very clear that the mere fact that a corner lot has once had an assessment imposed upon it for the construction of a sewer in front of it along one of the streets upon which it abuts does not necessarily furnish a constitutional reason why it may not be subsequently assessed for the construction of a sewer along and through the other street upon which it abuts.  Indeed, it is generally held that the existence of a sewer, of either private or public construction, is no defense against an assessment for the construction of a new sewer; for it has been deemed evident that although the property may not need the new

sewer for present drainage purposes, it may, nevertheless, be enhanced in value thereby and so receive a benefit in addition to that derived from the former sewer. Proper sewerage facilities in a city is 'of such sanitary importance that the construction of a sewer has a well known tendency to enhance the value of all the contiguous or adjacent lots in the neighborhood of its construction regardless of the present necessity of any particular tract for sewer connections. It is apparent that plaintiff's corner lot might have received additional value by reason of the enhancement in value of the other lots in the neighborhood and the general improvement of the condition of the neighborhood from a sanitary standpoint. It may be that the benefit will not be as great as that which is received by other property having no previous sewer facilities; but that it may be benefited is a generally accepted theory. In other words the benefit in such case is not dependent altogether upon a necessity for present drainage or sewer connections.

In Rich v. Woods, (Ky.) 82 S. W. 576, it was held that where a corner lot had been assessed one dollar per front-foot on one of the streets for the construction of a sewer along that street, it was nevertheless liable' for an assessment for the constrction of a sewer along the other street. It was said: "A lot fronting on two streets has more advantages and consequently more value, than if it fronted on one only. As equality of public burdens is a cardinal consideration in their imposition, it must follow that the lot that gets twice as much advantage from a public improvement as another must pay twice as much of the cost of the improvement as the latter. The basis of advantage is necessarily more or less arbitrarily fixed, yet approximate equality, at least, is attained by the adoption of either the front-foot theory, or that of the square feet of a given area." And referring to the advantage of a public sewer it was said further: "It is deemed, and now generally accepted, that such improvements do enhance the value and add to the enjoyment not only of all the abutting lots, but to the whole neighborhood, thereby reflecting an additional value upon all

property brought into more general use and demand by its presence."

In Michener v. Philadelphia, 118 Pa. St. 535, it was held that the fact that a property owner had been assessed with and paid his part of the cost of sewers previously constructed, and which, as alleged by him, were fully adequate, is no defense to the claim for the cost of another sewer constructed under a municipal ordinance. In a New Jersey case it was said: "Nor is there any illegality in assessing property drained by the new sewer, although it had been previously assessed for the old sewer." (State v. Jersey City, 29 N. J. L. 441, 453.) In Illinois, where assessments for such improvements seem usually to be made upon actual view by appraisers, commissioners, or a similar body, the court, after suggesting that the amount of previous assessments for the privilege of connecting with the sewer should be taken into account, said: "It is not an objection, however, to the assessment to pay for constructing the connecting sewer that the privilege of connecting has already been the subject of a special assessment against the property." (Snydacker v. West Hammond, 225 Ill. 154; see also Coburn v. Bossert, 13 Ind. App. 359; St. Joseph v. Owen, 110 Mo. 445; Atchison v. Price, 45 Kan. 296; 28 Cyc. 1130.)

Where an assessing board upon a consideration of benefits adopted an arbitrary rule by which one piece of land already sufficiently drained by a sewer had the same burden imposed upon it by the assessment for a new sewer as other lots not already drained, it was held in Connecticut that the assessment was unreasonable. (Clapp v. Hartford, 35 Conn. 66.) And in New York, where it is uniformly held and was indeed held in the case about to be cited that an assessment made on a uniform rate according to frontage by appraisers does not necessarily violate any rule of law to the prejudice of property owners, yet where the entire cost of a sewer built upon one side of the street has been assessed solely upon the property upon that side of the street because it conferred no benefit upon the premises on the

other side, which, being considerably lower than the sewer could not drain into it, it was held erroneous in making an assessment for a sewer subsequently built upon the other side of the street to assess the property owners on the side of the street covered by the first sewer at the same rate per foot as those on the side where the new and parallel sewer ·was constructed. (People v. Desmond, 186 N. Y. 232.)

We are then to inquire whether the statute provides for an unconstitutional method or proceeding for making the assessment. With reference to the methods ordinarily chosen for apportioning assessments we can do no better than quote Judge Cooley's statement of the matter. That learned author states: "1. The major part of the cost of a local work is sometimes collected by general tax, while a smaller portion is levied upon the estates specially bene-fited. 2. The major part is sometimes assesed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits. 3. The whole cost in other cases is levied on lands in the immediate vicinity of the work. In a constitutional point of view any of these methods is admissible, and one may be sometimes just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative ques-tions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule." (Cooley on Taxation, 3rd Ed., 1203-1205.)

The same author, continuing, explains that there are two methods for making assessments. "1. An assessment made by assessors or commissioners, appointed for the purpose under legislative authority, and who are to view the estates, and levy the expense in proportion to the benefits which in their opinion the estates· respectively will receive from the work proposed. 2. An assessment by some definite standard fixed upon by the legislature itself, and which is

applied to estates by a measurement of length, quantity, or value." (Id. 1205.)

When benefits are assessed after the first method above suggested, the district within which the taxes shall be laid may be determined, according to that author, in either of two methods. 1. The legislature, or, when properly authorized, the legislative authority of the municipality, may determine over what territory the benefits are so far diffused as to render it proper to make all lands therein contribute to the cost; or, 2. The assessors or commissioners who are authorized to make the assessment, may have the whole matter submitted to their judgment, to assess such lands as in their opinion are specially benefited. (Id. 1206, 1207.)

Judge Cooley further says: "The whole subject of taxing districts belongs to the legislature, so much is unquestionable. The authority may be exercised directly, or, in the case of local taxes, it may be left to local boards or bodies; but in the latter case the determination will be by a body possessing for the purpose legislative power, and whose action must be as conclusive as if taken by the legislature itself. It has been repeatedly decided that the legislative act of assigning districts for special taxation on the basis of benefits cannot be attacked on the ground of error in judgment regarding the special benefits, and defeated by satisfying a court that no special and peculiar benefits are received. If the legislature has fixed the district, and laid the tax for the reason that, in the opinion of the legislative body, such district is peculiarly benefited, its action must in general be deemed conclusive. No doubt there may be exceptions; and one of these would be a case in which, under pretense of apportionment, a work of general benefit had been treated as a work of merely local consequence, and the cost imposed on some local community in disregard of the general rules which control legislation in matter of taxation. Another is where, under pretense of apportionment, a basis has been fixed upon which cannot possibly, as regards the particular work to be constructed, be just; as

(6)

where a statute assumed to confer upon a city the authority to levy sewer assessments upon any property supposed to be benefited in proportion to area, but not limiting the assessment to lots along or near the sewer, or to lots contiguous to each other, or even to such as received direct or peculiar benefits." (Id. 1207-1209.)

In Hamilton on Special Assessments, the author says: "Fixing the taxing district, or, in other words, defining the territory within which the special assesment shall be made, is exclusively a legislative prerogative, although not an arbitrary or unrestricted one. The legislative body may itself by enactment fix the district, or, as more common, delegate it to municipal bodies under charter provisions or general acts. It is axiomatic that the legislature may authorize the whole expense of a local improvement to be paid by general taxation, or by special assessment on the property benefited, or by a portion to each, so that the legislative discretion as to how large the district may be can seldom be questioned. How small it may be has never been determined." (Sec. 213.)

In summing up the general result of an extended reference to the decisions of courts concerning local improvements, and assessments in respect thereof, Judge Dillon, in the 4th edition of his work on Municipal Corporations states the following conclusions:

"1. A local assessment upon property immediately and specially benefited by a local improvement of a street, although resting for its foundation upon the taxing power, is distinguishable in many respects from a tax levied for the general purposes of the state or the general purposes of the municipality."

"2. A local assessment or tax upon the property benefited by a local improvement may be authorized by the legislature."

"3. Special benefits to the property assessed, that is, benefits received by it in addition to those received by the community at large, is the true and only just foundation upon which local assessments can rest; and to the extent of spe-

cial benefits it is everywhere admitted ʻthat the legislature may authorize local taxes or assessments to be made."

"4.   When not restrained by the constitution of the particular state, the legislature has a discretion, commensurate with the broad domain of legislative power, in making provisions for ascertaining what property is specially benefited and how the benefits shall be apportioned."

"5.   The assessments may be made upon all the property specially benefited by the particular improvement according to the exceptional benefit each lot or parcel of property actually and separately receives.  ·This is, perhaps, the method most generally adopted by the legislation in this country, and it is the one which, in the author's judgment, is right in principle and the most just· in its practical workings."

"6.   Where the property is urban, and has been platted into blocks, with lots of equal depth which abut the local improvement for which the assessment is made, and there are no special constitutional restrictions in the way, and nothing in the nature and circumstances of the particular case to make an assessment in proportion to the frontage of the lots upon the improvement work manifest injustice, it is generally, but not always, regarded as within the competency of the legislature to provide that it may be so made."

"7.   Under the same conditions and restrictions, the legislature may authorize the assessment upon the lots benefited, in proportion to their superficial area."

"8.   Whether it is competent for the legislature to declare that no part of the expense of a local improvement of a public nature shall be borne by a general tax, and that the whole of it shall be assessed upon the abutting property and other property in the vicinity of the improvement, thus for itself conclusively determining, not only that such property is specially benefited, but that it is thus benefited to the extent of the cost of the improvement, and then to provide for the apportionment of the amount by an estimate to be made by designated boards or officers, or by

frontage or superficial area, is a question upon which the courts are not agreed.. Almost all of the earlier cases asserted that the legislative discretion in the apportionment of public burdens extended this far, and such legislation is still upheld in most of the states. But since the period when express provisions have been made in many of the state constitutions, requiring uniformity and equality of taxation, several courts of great respectability, either by force of this requirement or in the spirit of it, and perceiving that special benefits actually received by each parcel of contributing property, was the only principle upon which such assessments can justly rest, and that any other rule is unequal, oppressive, and arbitrary, have denied the unlimited scope of legislative discretion and power, and asserted what must, upon principle, be regarded as the just and reasonable doctrine, that the cost of a local improvement can be assessed upon particular property only to the extent that it is specially and peculiarly benefited; and since the excess beyond that is a benefit to the municipality at large, it must be borne by the general treasury." (Sec. 761.)

Commenting upon the above propositions, the author says with reference to the 4th that, as stated, it is nowhere denied; but that adjudged cases do not agree as to the extent of the legislative power, some courts, which follow the doctrine of the leading case of People v. Brooklyn, 4 N. Y., 419, asserting that the legislative authority in that regard is quite without limits, while the tendency of later decisions is to hold that the power is not unlimited; but that the assessments must be apportioned by some rule capable of producing reasonable equality, "and that provisions of such a nature as to make it *legally impossible* that the burden can be apportioned with proximate equality are arbitrary exactions and not an exercise of legislative authority." It is evident, we think, that by the statement just quoted the author was not intending to include as a "legally impossible" rule in all cases one providing for an assessment by area, value, or frontage of abutting lands or those so situated in a compact territory contiguous to the improve-

ment as would be *prima facie* or presumptively benefited. The author, we think, had in mind the same exceptions referred to by Judge Cooley as to the extent of the legislative authority.

The author further observes in commenting upon the 6th proposition, above quoted, that in relation to such improvements as grading, paving or sewers, the basis of frontage where sustained, is regarded as a convenient, practical, and in most cases in the long run a just method of ascertaining the benefits severally received, since the benefits actual and probable to the abutters is generally proportioned to the length of their respective fronts; "and hence, this rule, as a rule of apportionment is one which, on the conditions above named, the legislature may, in its discretion, prescribe." The comment thus made, we think, seems also to have been intended as applicable, or at least it would appear to apply, to the 7th proposition concerning the rule of apportionment by superficial area. Referring especially to the area rule it is stated that if other than abutting lots are thus assessed, and especially if the property assessed cannot as of right participate in the benefit and use of the improvement, and the extent of the district is such as to include lots directly and largely benefited with those only indirectly and slightly benefited, then an assessment of all such lots by the same rule will not be sustained.

An interesting discussion of the question in one aspect is to be found in Thomas v. Gain, 35 Mich., 155, in an opinion by Judge Cooley. The case is occasionally cited as an authority against the principle that the legislature may fix a rule of apportionment by area of lands within a prescribed district. But it is evident that that case was decided with reference to its peculiar facts. The act did not confine the assessment to lands upon the street in which the sewer was laid, and it was said that there was nothing in the act, or in the nature of things, to prevent a lot being assessed several times in different districts. The learned justice, however, said in explaining the decision: "In what has here been said, it is not

intended to decide, or to intimate, that a sewer tax may not, under some circumstances, be lawful though apportioned by the area of the lots assessed. If under the law providing therefor the assessment were confined exclusively to lots lying contiguous to each other, and on or near the street in which the sewer was to be constructed, and all property urban lots, or, as they are sometimes designated, in-lots, as distinguished from the outer lands of the town, which receive only slight and indirect benefit from such improvements, and if the law also provided for private drains into the sewer as matter of right on the part of the proprietors of the lots assessed, the case would be so different from the one now before us that much of what we have said could have no application."

In that case former decisions of the same court were referred to with apparent approval that an assessment of paving and similar taxes may constitutionally be made in proportion to the frontage of lots along the improvement, and Judge Cooley said as to that proposition: "The idea that underlies statutes for this purpose is, that the benefit to the abutting lots is generally in proportion to the length of their respective fronts, and that as a rule this principle of apportionment is more just than any other. There is a basis of truth to this idea, and it is so generally accepted that assessments for street improvements are perhaps now more generally apportioned by the frontage than by any other standard." The learned Justice also, during the course of the opinion, admitted that the legislature may prescribe the rule for the apportionment of benefits, but that such power was not unlimited; that the rule must at least be one which it is legally possible may be just and equal between the parties assessed. And further, it was stated as a general principle that parties taxed must have an opportunity to be heard regularly at some stage in the proceedings, and that their rights are not to be concluded by proceedings which are wholly *ex parte*.

That Judge Cooley did not regard such assessments fundamentally wrong or essentially unconstitutional appears not

only from his work on taxation but from his judicial opinions in various Michigan cases. In the case of Sheley v. Detroit, 45 Mich., 431, involving an assessment according to frontage, he said: "If anything can be regarded as settled in municipal law in this country, the power of the legislature to permit such assessments and to direct an apportionment of the cost by frontage, should by this time be considered as no longer open to controversy."

In order to sustain a statute of this character it is not necessary to hold that the power of the legislature is unlimited so as to prevent the interference of the judicial arm of the government where, in the enforcement of the rule prescribed, manifest injustice and inequality or a violation of a constitutional principle is shown. Generally, it may be said that the legislative authority is limited by the principle that the purpose for which a tax or assessment is laid must be a public one, and that it must directly appertain to the district taxed. (Judson on Taxation, Sec. 359.)

Assessments on the basis of frontage, area or value have been very frequently sustained, and we think are sustained in a large majority of the cases, and even by those courts who refuse to sanction the principle that the legislature may lay down a rule of apportionment based upon anything else than an ascertainment of actual benefits. In these courts, as well as in the others, the area or frontage rule is sustained upon the theory that in relation to the particular improvement it is a fair and reasonable measure of the benefits. So that irrespective of the constitutionality of an act so providing, it may be safely asserted that the rule itself, or an assessment by such rule, is not generally regarded as necessarily violative of a constitutional principle with reference to equality and uniformity, or the taking of property without just compensation.

The right of the legislature, however, to provide conclusively that without an inquiry into the question of benefits an assessment for a particular improvement or class of improvements shall be laid by a certain rule, as that of frontage

or area, is denied in some jurisdictions; and the authorities upholding such right are sometimes criticized as laying down a principle inconsistent with the theory upon which special assessments are founded.

It is well settled as a general proposition, that before the assessment shall be deemed to be conclusively established against him, the property owner is entitled to notice and hearing at some stage of the proceedings. By the decided weight of authority, however, it is held that where the statute prescribes the district to be specially assessed, and a fixed standard or rule of apportionment, so that a mathematical calculation is only required based upon the amount to be collected and the frontage or area of the lots within the district, a hearing upon the particular question of benefits or the application of the statutory rule is not necessary to constitute due process of law, and that a statute requiring an assessment by frontage or area of abutting lots is, therefore, not unconstitutional as a deprivation of property without due process of law. This is the view of the supreme court of the United States, and of most of the state courts. Authorities are numerous, therefore, sustaining the constitutionality of statutes similar to the one under consideration. (French v. Barber Asphalt Pav. Co., 181 U. S. 324; Chadwick v. Kelley, 187 U. S. 540; R. R. Co. v. Barber Asphalt Co., 197 U. S. 430; Cleveland v. Tripp, 13 R. I. 50; People v. Pitt, 169 N. Y. 521; Hadley v. Dague, (Cal.) 62 Pac. 500; English v. Wilmington, 2 Marv. (Del.) 63; Hackworth v. Ottumwa, 114 Ia. 467; Hilliard v. Asheville, 118 N. C. 845; Meggett v. Eau Claire, 81 Wis. 326; Scranton v. Koehler, 200 Pa. St. 126; Barber Asphalt Pav. Co. v. French, 158 Mo. 534; Gray's Lim. Taxing Power, &c., Sec. 1964, and cases cited in footnote.)

It was supposed by some courts after the decision in Norwood v. Baker, 172 U. S. 269, that this proposition had been overturned by the Supreme Court of the United States, and that the case was authority for the doctrine that an assessment upon some definite standard, as by area or frontage, without inquiry as to benefits, would not be due process of

law, and that a statute fixing a definite standard or rule of apportionment without providing for an inquiry as to benefits would be unconstitutional. The question again came before the court in French v. Barber Asphalt Paving Co., 181 U. S. 324, and in several other cases reported in the same volume, in which it was claimed that the case of Norwood v. Baker had overruled previous cases, and established the principle that the cost of the local improvement cannot be assessed against abutting property according to a definite rule or standard, unless the law under which the apportionment is made, provides for a preliminary hearing as to the benefits accruing to the property assessed. The court, however, explained that such was not the necessary import of the Norwood case; and a charter provision for assessing by the rule of frontage without an inquiry as to benefits was held not in violation of the Fourteenth Amendment with reference to due process of law. In a later case the court, by Mr. Justice Holmes, said with reference to the proposition:

"The argument for the plaintiff in error oscillates somewhat between the objections to the statute and the more specific grounds for contending that it cannot be applied constitutionally to the present case. So far as the former are concerned they are disposed of by the decisions of this court. There is a look of logic when it is said that special assessments are founded on special benefits and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed, whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least, it is peculiarly a thing to be decided by those who make the law. The result of the supposed constitutional principle is simply to shift the burden to a somewhat large taxing district, the municipality, and to disguise rather than to answer the

theoretic doubt.   It is dangerous to tie down legislatures too closely by judicial constructions not necessarily arising from the words of the constitution."   (R. R. Co. v. Barber Asphalt Co., 197 U. S. 430.)   In the same case it was further said: "A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to that lot.   The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least if its present and probable use be taken into account.   If that possibility does not invalidate the act it would be surprising if the corresponding fact should invalidate an assessment.   Upholding the act as embodying a principle generally fair and doing as nearly equal justice as can be expected seems to import that if a particular case of hardship arises under it in its natural and ordinary application, that hardship must be borne as one of the imperfections of human things.   And this has been the application of the cases." (Citing Davidson v. New Orleans, 96 U. S. 97; Mattingly v. District of Columbia, 97 U. S. 687; Parsons v. District of Columbia, 170 U. S. 45; Detroit v. Parker, 181 U. S. 399; Chadwick v. Kelley, 187 U. S. 540.)

As further illustrating the views taken by the courts upholding what is sometimes said to be the extreme doctrine, we desire to quote from the opinion in the case of People v. Pitt, 169 N. Y. 521: "The power of the legislature to impose the entire cost of the improvement * * * upon some rule or principle of apportionment prescribed in the statute, I assume cannot be doubted; * * * * and unless the legislature is restricted in the choice of methods, it may adopt such rule or principle of apportionment as it determines to be just and equitable.   It may select, as the basis of the rule or principle of apportionment, the assessed value of the several lots, the actual benefits to be derived from the improvement, a fixed percentage of the cost of the work, or a fixed sum per linear foot of the frontage of the parcels of property affected by the improvement. * * * *. The principle that the citizen cannot be deprived of

his property without due process of law is applicable to all
laws for imposing taxes; but only to this extent, and in this
sense, that before he is required to pay the tax or assess-
ment, or before it shall be deemed to be conclusively established
against him, he shall have notice of the proceeding
and an opportunity to be heard before some board or official
body competent to review the proceedings or to redress any
just grievance that he may have upon the facts. But the
rule or principle of apportionment is a question that rests
wholly with the legislature when enacting a law, and the
citizen has no absolute right to a hearing upon that question
any more than he is entitled to be heard upon the selection
by the legislature of the subjects of taxation.  *   *   *
Before the tax thus imposed becomes conclusive against the
property owner, he is entitled to a hearing upon certain
questions; that is to say, he must be permitted at some stage
of the proceedings to show that he owns no property, or if
he does that it is valued unequally 'or excessively, or that
he does not reside within the district where he has been
assessed, and, perhaps, other matters of fact which may go
to diminish the tax, or to avoid it altogether. But he is not
entitled to be heard at any stage upon the justice or pro-
priety of the principle upon which the tax is to be appor-
tioned.  *   *   *   *   No principle of apportionment can be
adopted that will not in some degree be open to this ob-
jection; and, hence, a rule or basis for the distribution of
the burden must, in the absence of some constitutional re-
striction, be a matter of legislative discretion. The prin-
ciples that apply to taxation for general purposes apply
also with equal force to taxation for local purposes or local
improvements. In both cases the basis of the apportionment
must be found in the law, and when expressed, whatever the
principle may be, whether based upon benefits, the value of
property, some fixed percentage of cost of the work or upon
frontage measured by the width of each lot affected by the
improvement, the discretion of the legislature in adopting
the principle is conclusive upon the courts, the local author-
ities and the property owners."

In Indiana, on the other hand, the property owner was held to be entitled to a hearing upon the question of benefits. The case so holding was decided after the decision of the Federal Supreme Court in Norwood v. Baker, and upon the assumption that this case had so declared. (Adams v. Shelbyville, 154 Ind. 467.) The previous decisions in Indiana had authorized the classification of that state with the majority which hold it competent for the legislature to conclusively declare that the cost of a local improvement shall be assessed upon the property in the district equally by frontage. In the case cited, the particular statute was held valid on the ground that it did not prevent, but in effect permitted the council, upon a hearing, to change the assessments from the frontage rule in such cases as they might deem just. We quote from the opinion a statement of the general principles adopted in the case, as showing the views maintained by the authorities on that side of the question: "The legislature may create, or authorize a municipality to create, a local taxing district for local improvement purposes, which includes part only of the property within the municipality; the legislature may declare conclusively that only the property within the taxing district shall be specially assessed on account of local improvement within that district; each parcel of contributing property may be assessed only to the extent that it actually receives special benefits; the taxing district as a whole may be assessed only to the extent of the sum of the special benefits actually received by the several parcels of contributing property; the improvement so far as its cost exceeds the special benefits resulting to the several parcels of property in the taxing district, is a benefit to the municipality at large, and such excess must be borne by the general treasury; property owners affected by an improvement, within a taxing district, are entitled to a hearing on the question of special benefits." The authority of that case is much lessened not only because the court incorrectly supposed the principles announced to accord with those laid down by the Supreme Court of the United States, but also for the reason

that in a later case in the same state, the court said that
the observations as to the constitutionality of the statute in
Adams v. Shelbyville were clearly *obiter dicta*; and it would
seem that that court will not feel bound by its statement
of the principles above quoted. (Voris v. Pittsburg Plate
Glass Co., 163 Ind. 599.)

We shall not consume further space by referring specifi-
cally to other decisions upon this general question. Enough
has been said to show the principles upon which the courts
are substantially agreed, and the point upon which the most
marked difference of opinion exists. It may be said that
where, instead of itself prescribing the taxing district and
the apportionment, the legislature commits the matter to
some subordinate body, which then must act in a quasi-
judicial capacity, it is generally held that the property owner
is entitled to a hearing upon the question of the benefits
to his property.

It must now be regarded as fully settled by the ulti-
mate authority, the Federal Supreme Court, that a statute
like the one here does not deny due process of law within
the meaning of the Fourteenth Amendment to the Federal
Constitution. It is self-evident that if the statute does not
violate the Federal Constitution as to due process of law,
it does not violate the state constitution in that respect, for
"due process of law" has the same meaning and effect in
either constitution. Yet there are state courts not in har-
mony with the Federal court upon the question, and which
refuse to be guided by its decisions in considering the effect
of the state constitution in such cases.

There appears to be an increasing tendency to consider
the question in the light of the result in individual cases
or with respect to assessments for particular improvements.
It was said by the court in Oregon to be its opinion, dedu-
cible from adjudged cases, "that the assessment will be up-
held wherever it is not patent and obvious from the nature
and location of the property involved, the district prescribed,
the condition and character of the improvement, the cost and
relative value of the property to the assessment, that the

plan or method adopted has resulted in imposing a burden in substantial excess of the benefits, or disproportionate within the district as between owners." And the court added: "This must be so, logically and necessarily, in view of the broad latitude accorded the legislature, in its discretion, to prescribe the taxing district, and the manner and method of making the assessment within the district. When it has exercised its legislative discretion, and prescribed a district and adopted a method, it ought to be plain and indisputable that it has exceeded its authority, before the court should set at naught its declared will. Neither ought the system to be condemned because there may be exceptions wherein it would work a legal injury to enforce it." (King v. Portland, (Or.) 63 Pac. 2.)

In Hadley v. Dague, (Cal.) 62 Pac. 500, the court said with reference to a statute providing that where an improvement is not of more than local or ordinary public benefit, the cost of any street improvement shall be assessed as an entirety upon the lots and lands fronting upon the improvements, and shall be apportioned between the several lots therein according to their frontage, that it was a declaration by the legislature that, in the judgment of that body, the property within that district will receive a benefit from the improvement in proportion to its frontage upon the work. "Unless, therefore, it is made to appear upon the face of the proceedings, or by some competent showing, that there is gross or substantial variation from this principle, it is the duty of the courts, under the rules and authorities above cited, to uphold the assessment. Before the judiciary would be justified in holding an assessment to be invalid, it should be made to appear that it is, as was said in Village of Norwood v. Baker, 'in substantial excess of the benefits,' or, as was said in Cleveland v. Tripp, that it 'palpably transgresses' the principle upon which it is authorized."

In Sheley v. Detroit, *supra*, Mr. Justice Campbell, in a concurring opinion, stated that, while he was not satisfied that the legal objections to the charter and ordinance regulation have not some force, he was, nevertheless, of opinion

that on the record a case had not been made out for relief, and he said: "We cannot assume, under the pleadings, that the improvement was not one which the city could make, and charge to a district for assessment. We cannot in this case have any certainty that the complainant has been seriously, if at all, overburdened beyond what his assessment would have been if made in another way. The proceedings are regular, and unless he shows some distinct and tangible grievance of a serious character, he makes out no cause for equitable interference."

The courts of Massachusetts look at a special assessment statute in the light of the facts in a particular case, and if the rule adopted by the legislature appears to be reasonable when generally applied, it will be upheld, or, when unreasonable and disproportionate as to property of a particular class, it will be held unconstitutional as to such property; and an assessment will be set aside when, as enforced in a particular case, the statute is shown to have operated unjustly. (Weed v. Boston, 172 Mass. 28; Sears v. Boston, 173 Mass. 71.) It is also held in that state that, if necessary to sustain the statute, the court will read into it, or construe it as though it contained, the words, "but in no case shall an assessment be made that exceeds the special benefit received by the estate assessed." And a statute so construed, was held constitutional, which provided for making an assessment at a fixed uniform rate according to frontage on the street where a sewer is constructed, or according to area, or both frontage and area. (Cheney v. Beverly, 188 Mass. 81.)

In Montana, where a statute requiring an assessment according to area was considered, the court said: "We are at least safe in saying that it may be regarded as now settled that, in the absence of a showing that the burden imposed by such assessments is altogether out of proportion to the benefit actually accruing to the property, the property owner cannot be heard to assert that his property has been taken from him without due process of law." (McMillan v. Butte, (Mont.) 76 Pac. 203.)

A recent text writer states as his opinion that the view taken in the class of cases just referred to affords the happiest solution of the difficulties that are presented in reference to the particular question under consideration. (Gray's Lim. of Taxing Power, Sec. 1969.)

It is to be observed in the first place with reference to the statute in question as affected by the constitutional provisions now being considered, that the act does not provide the procedure for the making of the assessments. That much is left to be regulated by municipal ordinance. There is no showing by the petition in relation to such municipal regulations. It must, therefore, be assumed that whatever notices or hearings are required to render the proceedings valid as due process of law were provided for, and the provisions complied with, except, perhaps, as to a hearing and inquiry upon the question of benefits to abutting property. There are questions upon which hearings might be had, without any violation of the statute, respecting the assessment and the amount thereof. For instance, the total cost which is proposed to be assessed upon the district, the extent of the area of any particular tract, the propriety of ordering the making of the improvement, the correctness of the computation of a particular assessment; and we suppose whether the improvement is of such a local character as to justify a special assessment to pay for its construction, or whether the expense should be borne by a general tax if that is authorized under the charter or laws; or, by the issuance of corporate bonds, which is expressly authorized for the purpose of establishing, constructing, maintaining, and extending a system of sewerage. There may be other questions. It is clear that the statute does not prevent the adoption of an ordinance providing for all necessary or proper notices and hearings. It is true that when the improvement is decided on, its cost ascertained or determined, and it is determined that special assessment shall be made, the district to be assessed, and the rule upon which each property owner shall be assessed is prescribed. But even here the statute seems to contemplate a hearing or at least an in-

quiry in respect of the assessment upon non-abutting property, in order to determine its situation as to sewer connections, and the amount to be deducted from that which would be levied upon it if abutting on the street.   The petition shows that the plaintiff filed written objections to his assessment, and that his objections so stated, were, first, that his lot had been previously assessed for the Evans Street sewer, which was adequate for the property, and, second, that the lot was not benefited by the new sewer.   It is not alleged whether a hearing was had or action taken upon such objections.   If necessary, it would be presumed that a hearing was had, and that the objections were not sustained.   All question as to notice and hearing is, therefore, eliminated from the case as here presented, except the mere question whether, by fixing the boundaries of the district and the rule of apportionment, there is a denial of due process of law.

It is, of course, essential to the validity of an assessment that it be levied under a valid and constitutional statute, but it is a cardinal principle that before a court will consider the constitutionality of a statute and declare it void, the party assailing it must present a case showing some just grievance and that he is entitled to some relief.

We are impressed with the importance of the consideration that the rule for sewer assessments prescribed by the statute is one generally regarded as fair, just and reasonable, where the district to be assessed is so fixed that the property within it will all naturally be drained by the sewer and receive a benefit therefrom; especially in the case of a lateral or local sewer, such as the one mentioned in the petition seems to be.   The statute is to be construed as intended to apply to those cases where special assessments would be proper.

We are of the opinion that the statute is to be understood as resting upon the theory of benefits, and stating a rule which, in the judgment of the legislature, will apportion the cost with practical equality as between the various lots specially benefited, and that all lots to the center of the

block on each side of the street will be benefited in proportion to the area thereof. Such statutes are usually construed as prescribing a measure of the accruing benefits. As such assessments are commonly made upon the basis of area or frontage, it must be evident that the consensus of opinion establishes such a measure as naturally just and equitable. In the statute under consideration, the provision as to deducting from the amount which otherwise would be assessed against non-abutting tracts the estimated expense of connecting with the sewer over and above that of connecting abutting property, seems to disclose upon the face of the statute a consideration of benefits in laying down the rule.

It is not shown by the petition, except by the general allegation that plaintiff's property was not benefited, that the district to be assessed as fixed by the statute would not naturally be drained by the sewer or that plaintiff's property or any other lot within the district was so situated as to make it impossible or impracticable to connect with said sewer. On the contrary, we think it may be taken into consideration that sewers are commonly placed in streets and that a district extending from each side of the street to the center of the block, would, under ordinary circumstances, receive a natural and special benefit from a sewer constructed in the street in front of the block; and, hence it seems that there would be no reason for holding under a general application of the statute, that the property required to be assessed is of such a nature as to be incapable of actual enhancement in value in consequence of the improvement. It is apparent that the property owned by the plaintiff would naturally receive a benefit from the sewer, and, since the fact of the previous assessment for the sewer upon the cross street affords no constitutional objection to the assessment complained of, there is nothing in the petition other than the general averment that benefits were not discussed and considered in levying the assessment to raise or suggest its invalidity from a constitutional point of view.

For all that the petition discloses the plaintiff may have had notice of every stage of the proceedings, and an opportunity to be heard and to offer all manner of objections to the assessment and the steps taken in levying the same. The value of the property is not stated. It is, at least, valuable enough for the owner to erect three houses upon it, which would seem to indicate its location in a part of the city compactly built. The tax is not large enough to necessarily or naturally suggest a great substantial excess over the benefits that may be supposed to have naturally accrued as a result of the improvement. With the record in this condition, the court ought not to declare the statute and assessment invalid as in violation of the constitutional rights of the plaintiff.

We do not care to go further at this time than to say that since the statute prescribes a rule or standard for assessing the benefits which the courts quite uniformly regard as fair, just and equitable in its general application, instead of declaring it incapable of supporting any assessment, because it may be possible to conceive that exceptional cases of injustice and deprivation of constitutional rights might arise under it, it is at least safer and more reasonable to sustain it, in the absence of a showing of its unconstitutional operation in individual cases. Mere technicalities will thus be avoided, and constitutional rights protected whenever they appear to have been invaded.

Considering this question, therefore, from the standpoint of the issues in the case upon the demurrer to the petition, as they have been herein explained, and for the purposes of the case upon such issues, we conclude and decide that the statute mentioned in the reserved questions does not contravene the provisions of either of the sections of the constitution referred to; and that the statute and assessment was valid as against the objections suggested by the reserved questions.

BEARD, J., and SCOTT, J, concur.