EUGENE L'HOTE *et al.*

*v.*

THE VILLAGE OF MILFORD.

*Opinion filed October 24, 1904—Rehearing denied December 8, 1904.*

1. CONSTITUTIONAL LAW—*legislative classification of cities by population cannot be arbitrary.* In order that legislative classification of municipal corporations according to population shall avoid falling within the constitutional prohibition against special or local legislation, there must be some reasonable relation between the situation and circumstances of the municipalities classified and the purposes to be attained by the statute.

2. SAME—*when classification is arbitrary.* A legislative classification of cities by population for the purpose of regulating consents of property owners to local improvements to be paid for by special assessment is arbitrary and void which places in one class very large cities and very small ones and in the other cities of intermediate size, for which different regulations are made.

3. SAME—*amendments of 1903 to section 4 of Local Improvement act are void.* The amendments of May 11 and May 15, 1903, to section 4 of the Local Improvement act of 1897, (Laws of 1903, p. 101,) are void, as in violation of section 22 of article 4 of the constitution, prohibiting special legislation respecting municipal corporations.

4. SAME—*amendment of 1899 to section 4 of Local Improvement act is in force.* The amendments of May 11 and May 15, 1903, to section 4 of the Local Improvement act of 1897 being unconstitutional, the amendment of 1899 to the same section, (Laws of 1899, p. 95,) requiring a property owner's petition as a prerequisite to the passage of an ordinance for an improvement to be paid for by special assessment or special taxation in municipalities containing less than 50,000 inhabitants, is still in force.

APPEAL from the County Court of Iroquois county; the Hon. FRANK HARRY, Judge, presiding.

ROBERT DOYLE, for appellants.

MORRIS & HOOPER, McCLELLAN KAY, and J. H. DYER, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

This is an appeal from the judgment entered in the county court of Iroquois county confirming a special tax levied under the authority of an ordinance adopted by the board of trustees of the village of Milford, providing that Grant avenue, in the village, from the north line of Jones street to the south line of Frederick street, a distance of two blocks, should be improved by paving the roadway of the same with brick and curbing it with sandstone curbing. A motion to dismiss the proceeding, based on the fact that no petition of the owners of the property on the line of the proposed improvement and to be affected thereby had been presented asking that the avenue be so improved, was entered and overruled. The denial of the motion is assigned as for error.

Section 4 of the act entitled "An act concerning local improvements," approved June 14, 1897, as amended by the act approved April 19, 1899, (4 Starr & Cur. Stat. p. 149,) requires that in cities, towns and villages of the population of 50,000 or less by the last preceding census of the United States, no ordinance for making any improvements to be paid for by special assessment or special taxation of contiguous property should be adopted unless the owners of one-half of the property abutting on the line of the improvement should petition therefor, and that in such municipalities having a population of 10,000 and less unless a majority of resident property owners affected by such proposed improvement should also petition for the same. The appellee village has a population of 1077, and under said section 4 of the act of 1897, as amended by the act of 1899, a petition was essential to the power of the village board to adopt the ordinance. At the session of the General Assembly of 1903 two acts amendatory of said section 4 were adopted. The first of said amendatory acts of 1903 was adopted May 11, and reads as follows:

"Sec. 4. When any such city, town or village shall, by ordinance provide for the making of any local improvement, it shall, by the same ordinance, prescribe whether the same

shall be made by special assessment, or by special taxation of contiguous property, or general taxation, or both. But in cities, towns or villages, having a population of less than 50,000 and more than 20,000, ascertained as aforesaid, [*i. e.,* the last preceding census of the United States,] no ordinance for making any local improvement to be paid by special assessment or by special taxation of contiguous property, shall be adopted, unless the owners of one-half of the property abutting on the line of the proposed improvement, shall petition for the same." (Laws of 1903, p. 101.)

The second of said amendatory acts of 1903 was adopted May 15, and reads as follows:

"Sec. 4. When any such city, town or village shall, by ordinance, provide for the making of any local improvement, it shall, by the same ordinance, prescribe whether the same shall be made by special assessment, or by special taxation of contiguous property, or general taxation, or both. But in cities, towns and villages having a. population of less than twenty-eight thousand (28,000) and more than 20,000, ascertained as aforesaid, [*i. e.,* the last preceding census of the United States,] no ordinance for making any local improvement to be paid by special assessment or by special taxation of contiguous property, shall be adopted, unless the owners of one-half of the property abutting along the line of the proposed improvement shall petition for the same: *Provided, however,* that on a petition signed by one hundred property owners in cities, towns and villages containing a population, ascertained as aforesaid, of between twenty-eight thousand (28,000) and fifty thousand (50,000), the question may be submitted to a vote of the people at any general or special election, whether or not said improvements can be made, unless the same is petitioned for by at least one-half of the property owners abutting on the line of said improvement, and if a majority of all the votes cast at such election shall be in favor of said proposition, then a petition, as hereinbefore provided, shall be necessary in such city, town or village

before such an ordinance can be passed." (Laws of 1903, p. 101; 5 Starr & Cur. Stat. p. 70.)

The appellee village having, as before said, à population of 1077 inhabitants, it is not necessary, under either of the amendatory acts of 1903, to the jurisdiction of the municipal board to adopt an ordinance for the construction of local improvements by special assessment or by special taxation, that a petition of property owners shall be presented to the board of trustees asking that the improvement be made. Under section 4 of the act of 1897, as amended by the act of 1899, a petition signed by the owners of one-half of the property abutting on the line of the improvement, and also by a majority of the resident property owners, is necessary to the adoption of such an ordinance. by the board of trustees of the village.

It is urged, however, that each of such amendatory acts adopted in 1903 contravenes the prohibition of the constitution of 1870 against the enactment of local or special legislation. Section 22 of article 4 of the constitution of 1870 declares "the General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * Incorporating cities, towns or villages, or changing or amending the charter of any town, city or village; * * * granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise."

The village of Milford was incorporated under the provisions of the general Incorporation act, providing for the incorporation of cities and villages. This general Incorporation act is the charter of the village and of all cities and villages in the State organized under it. Enactments empowering the city councils of cities or boards of trustees of villages to construct local improvements by special assessment or by special taxation, if legal, become a part of the charters of such municipalities, and acts amendatory of such enactments constitute changes or amendments of the charters

of such municipalities, and such amendatory acts, it is declared by said section 22 of article 4 of the constitution, shall be uniform and general in their operation, and not local or special. (*People* v. *Cooper,* 83 Ill. 585; *Potwin* v. *Johnson,* 108 id. 70; *Bessette* v. *People,* 193 id. 334.) Enactments which deny to the governing body of certain, only, of the cities and villages of the State power to adopt ordinances for the construction of local improvements except when petitioned so to do by the owners of property affected by the improvement, at the same time clothe the property owners in such cities and villages with a privilege and an immunity not possessed by the owners of property in the other cities and villages of the State, and are for that reason unconstitutional, if local or special in character. Neither of the amendatory acts of 1903 contains an emergency clause, nor does the latter in express terms purport to repeal the former of them, nor does either of them expressly repeal the amendatory act of 1899, though they are repugnant to each other and also to the act of 1899. As we are of the opinion that both of said acts of 1903 are unconstitutional, it is not important to consider the effect of such repugnancy. Each of these amendatory acts of 1903 changes or amends the charters of certain, only, of the cities, towns and villages of the State, and also grants to owners of property in certain, only, of the cities, towns and villages of the State the privilege of inducing and empowering the municipality, by petition, to construct a local improvement or of refusing to invest the city with power to make a local improvement by special assessment or special taxation, by declining to join in a petition therefor,—privileges and immunities which are denied to or not given or granted to the owners of property in other cities, towns or villages of the State. These acts, therefore, attempt to legislate in matters as to which section 22 of article 4 of the constitution of 1870 prohibits the enactment of local or special laws. If the amendatory acts are local or special laws they are unconstitutional and invalid.

A law is not to be denominated local simply because it may operate only in certain of the municipalities of the State, if, by its terms, it includes and operates uniformly throughout the State under like circumstances and situation. The cities and villages of the State may be classified for purposes of legislation on the basis of population, if such basis has some reasonable relation to the purposes and objects to be attained by the legislation and in some rational degree accounts for the variant provisions of the enactment. A classification of cities, towns and villages by population cannot be arbitrarily adopted as a ground or reason for investing some of them with powers denied or not granted to others, if, though there be difference in population, there is no difference of situation or circumstances of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and objects to be attained by the statute. As we said in *People* v. *Knopf,* 183 Ill. 410, on page 420: "The rule is, that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes and objects to be attained. There must be something, in the nature of things, which in some reasonable degree accounts for the division into classes." Again, we said in *Bessette* v. *People, supra* (p. 347) : "It is true, that a classification of the cities and villages of the State by population, as a basis for legislation, may be valid, but a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. 'There must be some reasonable relation between the situation of municipalities classified and the purposes and objects to be attained.'—*People* v. *Knopf,* 183 Ill. 410; *People* v. *Martin,* 178 id. 611; *People ex rel.* v. *Cooper,* 83 id. 585." In *Peo-*

*ple* v. *Cooper, supra,* we said: "It is the substance, and not
the mere form, given to an enactment which must determine
its constitutionality. If the act must necessarily produce a
result clearly and unquestionably forbidden by the constitu-
tion it cannot be upheld, whatever may be its form or pro-
fession."

A class of cities cannot be arbitrarily erected by the legis-
lature for the sole purpose of enabling the law-making body
to confer powers upon such cities and villages which cannot
be enjoyed by other cities and villages of the State, or of
conferring on the electors of such cities and villages, or on
the owners of property therein, privileges or immunities not
permitted to be enjoyed by the electors or property owners
in the other municipalities of the State, unless there be some
sound reason and principle justifying the view that such
cities and villages so classified are reasonably and rightfully
to be regarded as comprising a separate and distinct class of
municipalities. If the result of legislation is to establish dis-
similarity in the powers of different cities in respect of the
making of local improvements, the act would clearly be un-
constitutional if its operation be restricted to certain, only, of
the cities and villages in the State, unless there is actually
some dissimilarity in the situation and circumstances of the
different municipalities bearing a rational relation to the
dissimilarity of powers to be exercised by them. A more
densely populated city has increased responsibilities and du-
ties and may need legislation different from that required in
smaller cities and towns. Additional powers may therefore
be necessary in the larger cities than in the smaller cities and
villages, and the population of cities may justify their classi-
fication as the basis for the enactment of laws to govern in
the cities of the different classes. Thus, the classification of
the cities and villages of the State into two classes, one of
those having a population of 50,000 or less and the other
having a population of 50,000 or more, and giving those hav-
ing a population of 50,000 or more power to adopt ordi-

nances providing for the making of local improvements by
special assessments or by special taxation without a petition
of property owners and denying that power to the other
class,—those having a population of less than 50,000,—as
was done by the act approved April 19, 1899, amending sec-
tion 4 of the act concerning local improvements, approved
June 14, 1897, was grounded upon a distinction which exists
in the circumstances and conditions of cities and villages
falling within the two different classes. The first class in-
cluded all the cities having a population of 50,000 and over
and all cities which might attain that population. The second
class included all municipalities having a smaller population
than 50,000. The constitutionality of this act of 1897 is not
challenged. That it is a valid enactment has been recognized
by this court in *City of Bloomington* v. *Reeves,* 177 Ill. 161,
*Patterson* v. *City of Macomb,* 179 id. 163, *Whaples* v. *City
of Waukegan,* 179 id. 310, *McVey* v. *City of Danville,* 188
id. 428, *Merritt* v. *City of Kewanee,* 175 id. 537, *Trah* v. *Vil-
lage of Grant Park,* 192 id. 351, and in other cases, and can
not now be regarded as an unsettled question. It proceeds on
the theory that large and populous cities require different
powers and different legislation from that which is requisite
to meet the wants and needs of smaller and less populous mu-
nicipalities, and classifies the cities and villages of the State
in accordance with that view. But the classification adopted
by each of the amendatory acts of 1903 seems purely arbi-
trary. The first of these amendatory acts creates two classes
of municipalities, namely, one class embracing all cities hav-
ing a population of more than 20,000 and less than 50,000,
and the second embracing all cities having a population of
more than 50,000 and less than 20,000. The first class com-
prises cities of intermediate population, and the second class
places together the great metropolis of the State, with a pop-
ulation approaching 2,000,000 of people, and the smallest
incorporated village in the State. The act proceeds on the
theory that in cities of more than 20,000 and less than 50,000

the owners of property should possess the privilege and immunity of authorizing or declining to authorize the construction of local improvements by special assessment or special taxation, and that the owners of property in all other cities and villages in the State, great and small, should not possess that privilege; and also upon the theory that the governing board of cities of the designated intermediate population should be restricted in respect of power to order local improvements to be made by special assessment or special taxation, and should be controlled by the wishes of the property owners in regard to the construction of public improvements at the expense of the owners of the property, while in all other cities and villages the governing body should possess power to make improvements to be paid for by the property owners, against the will of such owners or the majority thereof.

The right of the owner of property to petition for the making of local improvements, or the right to refuse to join in such petition, enables such owner to assist in securing an improvement which will, in his view, beneficially affect his property, and in preventing the making of an improvement which imposes what he believes to be an unreasonable burden of taxation upon it. It is a privilege which he may exercise to secure the advantage of the improvement of his property or be availed of for the protection of his property. Can it be there is nothing in the situation and circumstances of property owners or their property in cities having a population of 50,000 and more, and also in cities having a population of 20,000 and less, and villages of still lesser population, which renders the existence of the privilege unnecessary or unimportant, if the creation and preservation of the right be so important to the owners of property in cities having a population of less than 50,000 and more than 20,000 as to justify the classification of such property owners in a separate class and the enactment of legislation relating to such class? The selection of cities having a popu-

lation of less than 50,000 and more than 20,000, as constituting a distinct class from the other cities of the State and demanding particular and peculiar legislation; investing the inhabitants and property owners of such cities with special privileges and immunities, and placing all other municipalities in the State in another class, and giving the governing boards of the cities, so classified, dissimilar powers and to their inhabitants and electors different privileges and immunities, cannot be defended against the charge that the classification is purely arbitrary, and without any reference or relation whatever to the legislation that is proposed to be predicated in the supposed distinction between the cities and villages placed in the different classes. The later of the enactments of 1903 still more glaringly offends against the fundamental law. It places all cities having a population of less than 28,000 and more than 20,000 in one class, and denies to them power to adopt ordinances making local improvements except on a petition of property owners. It places all other municipalities,—the great metropolis and the smaller incorporated villages,—in another class, and gives the governing bodies in that class, power to make local improvements without consulting the property owners, but selects certain of such municipalities,—those having more than 28,000 and less than 50,000,—as a further special class, and authorizes the electors in such latter municipalities to determine, by ballot, whether an ordinance for making a local improvement may be adopted without a petition of the property holders. When considered in view of the population of certain cities as disclosed by the census, it is manifest this latter act was adopted for the purposes of securing local and special legislation for the benefit of certain particular cities in the State which could not be named in the act but could be designated with no less certainty by means of the classification. What actual or rational distinction can possibly be imagined which will justify the creation of a class of cities having a population of less than 28,000 and more than 20,000 and in-

vesting the owners of property in cities of that class with the privilege of petitioning for local improvements and denying power to municipal authorities of such cities to make local improvements except on such petitions, and empowering cities having a greater population than 28,000 with power to make such improvements without a petition and without regard to the wishes of the owners of property in such cities, as was proposed to be done by the later of the acts of 1903? Or how can an act be defended against the charge that it is local or special legislation, which proposes to create as a separate class all cities and villages having a population of between 28,000 and 50,000 and conferring on each of the said municipalities, because the population is between these numbers, the special and exclusive right and privilege of determining for itself, by the ballots of its legal voters, whether the governing body of the municipality shall have power to adopt ordinances making local improvements to be paid for by special assessment or special taxation without the petition of property owners?

The conclusion is irresistible that in each of these enactments the classification of the municipalities by population does not bear any true relation to the purposes and objects of the legislation. It is clear that the classification adopted in each of the acts is not based upon any distinction having a rational or reasonable relation to the special legislation affecting the classes. The classification is wholly arbitrary, and does not justify the legislation which would clothe some of the municipalities of the State with chartered powers not possessed by others, and which would also confer special privileges and immunities on property owners and electors in some of such municipalities which are denied to the owners of property and to electors in other of the cities and villages of the State. Both of the amendatory acts of 1903 contravene the organic law and are inoperative and void. The amendatory act of 1899 remains in force, and under it the board of village trustees of the appellee village were lacking in power

to adopt the ordinance in the absence of a petition by the owners of the property to be taxed to pay for the proposed improvement.

The judgment appealed from must be and is reversed.

· *Judgment reversed.*