(No. 12416.—Judgment affirmed.)

THE PEOPLE *ex rel.* John W. Black *et al.* Appellants, *vs.* JOHN J. ARMSTRONG *et al.* Appellees.

*Opinion filed December 18, 1918—Rehearing denied Feb. 7, 1919.*

1. CONSTITUTIONAL LAW—*curative legislation deals only ·with the past.* Curative legislation deals only with the past and forms an exception to the general rule that classification for the purpose of legislation cannot be based solely on conditions already existing.

2. SAME—*section 3 of the curative act of 1917, relating to high schools, is valid.* Section 3 of the curative act of 1917, relating to high schools, which provides that where two districts overlap in territory the district which was first established and continues to conduct a high school shall be validated and confirmed, is based upon a reasonable distinction between the two districts and is not unconstitutional.

3. SCHOOLS—*what is not required by curative act of 1917.* The curative act of 1917, relating to high school districts, applies to every attempted organization of a high school district, whether under the act of 1911 or that of 1895, and it does not require that all the preliminary steps to organize the district shall have been taken in accordance with the requirements of the act of 1911.

APPEAL from the Circuit Court of Coles county; the Hon. WALTER BREWER, Judge, presiding.

EMERY ANDREWS, State's Attorney, JOHN McNUTT, and BRYAN H. TIVNEN, for appellants.

E. L. WALKER, T. E. LYONS, EDWARD C. CRAIG, DON-ALD B. CRAIG, and JAMES W. CRAIG, JR., for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an information in the nature of *quo warranto* filed in the circuit court of Coles county, requiring the president and members of the board of education of supposed Township High School District No. 151 of Douglas and Coles counties to show by what warrant they claimed to hold and execute such offices. The information consisted of five counts. The first two and the last two counts were made up of general charges of usurpation of the offices of president and members. The third count charged illegality of the district because it superimposed on other districts. The trial court sustained a demurrer to the third count. Several pleas were filed, but after the so-called curative act was passed a new plea was filed, which set out all the facts and proceedings which, it is alleged, justified the legal organization and existence of said township high school district. Appellants filed replications to this plea, and demurrers were filed to these replications, which the court, after argument, sustained. Appellants elected to stand by the replications, and judgment was entered in favor of the appellees holding them to be *de jure* officers of the high school district and that said high school district had been legally organized and finding that appellants should pay the costs. From that judgment this appeal was taken.

From the allegations set up in the pleadings upon which the case was heard in the trial court, it appears that on February 27, 1915, there was presented to the county superintendent of schools of Douglas county, in which the greater part of the territory described in the petition was situated, a petition for the organization of a township high school

district, signed by more than fifty legal voters of the territory therein described; that the county superintendent called an election for the purpose of voting for or against the organization of the proposed township high school district March 10, 1915, and named the judges; that an election was held in accordance with the notices, at which 388 votes were cast for and 172 against organizing said district; that thereafter the county superintendent of schools declared the proposition carried, and later it was duly agreed that said township high school district should be known as No. 151; that on March 21, 1915, the county superintendent of schools of Douglas county ordered an election for a board of education for the high school district, to be held April 7, 1915; that notices were posted and judges named, and that at said election persons were respectively elected president and members of such board of education; that on May 24, 1915, on the presentation of a petition to said board of education in accordance with the requirements of the statute of 1911, said board of education called an election for the purpose of submitting to the voters in said territory a proposition to purchase or locate a school house site for said high school and to build the school house in said district; that the election was duly held and the proposition for building the school house received a majority of 184 votes but no site received a majority of all the votes cast at the election; that at an election duly called and held to vote for or against the proposition to issue bonds for said high school district to the amount of $75,000 the proposition to issue said bonds was carried; that on September 8, 1915, the question of choosing a site for the high school was submitted at another election and a site was selected; that on September 15, 1915, bonds of said township high school district were issued to the amount of $75,000 and were sold for $78,563; that on July 31, 1915, a special tax was levied of $25,000 for building purposes and a $15,000 special tax for educational purposes; that on November 16, 1915, after due notice, bids

were received for erecting and furnishing a township high school building and contracts were let for the same; that condemnation proceedings have been brought in the county court of Douglas county to condemn a part of the real estate selected for the site and other portions have been acquired by purchase; that in August, 1915, a portion of the high school building in school district No. 75, in Douglas county, was leased by the high school board of education No. 151 for the use of said high school district, which building was located in Arcola, Illinois, and said district will be called the Arcola high school district in this opinion for convenience; that the information in this proceeding was filed May 4, 1916, and that practically all these acts were taken by the Arcola high school authorities prior to that date; that teachers have also been employed since August, 1915, and a high school has been conducted since that date; that the first year 135 pupils were enrolled, the next year 146 and during the present year 168 pupils, with a teaching force this year of a principal and eight assistants.

It appears from the replications in this case that there was filed with the county superintendent of schools of Coles county on February 16, 1915, a petition for the organization of a township high school district in that county, which included, with other territory therein described, a considerable part of the present Arcola high school district; that said county superintendent did not proceed at once to call an election for the organization of said district, because he found that the notices for the election for the Arcola high school district, including part of the same territory, had already been posted, but that later on, at the suggestion and insistence of certain persons interested, the county superintendent of Coles county posted notices on June 2, 1916, for an election to be held June 20; that said election was so held and a majority of the votes cast at this election were in favor of establishing said township high school district, and the county superintendent of said county declared as

the result of said election that the township high school district had been so organized. This district was called Humboldt high school district and will be so named hereafter in this opinion. Thereafter, on July 19, 1916, in pursuance of an election duly called, a president and board of education were duly elected for the Humboldt high school district. It also appears from the replications that in view of certain litigation that had been either instituted or considered with reference to the validity of the Humboldt and Arcola districts as to the overlapping territory, practically nothing further has been done towards organizing or carrying on a high school in the Humboldt high school district.

There are certain other allegations in the plea and replications to the effect that those who were promoting the organization of each district had conspired to prevent the organization of the other district, but we do not deem it necessary to set out in detail the allegations on either side as to those questions.

The principal question argued in the briefs is as to which one of these two high school districts is entitled to the jurisdiction of the overlapping territory, and the proper decision of this question, it is contended, rests largely upon the construction and constitutionality of section 3 of the so-called curative act of 1917, which reads: "Whenever there are two such districts which overlap in territory, that district which shall have first established and now continues to conduct a high school, is hereby validated and confirmed." (Hurd's Stat. 1917, p. 2654.)

There can be no question from the record before us that the Humboldt district was not organized until after the election that was held for that purpose on June 20, 1916, and apparently it has not established and continued to conduct a high school. Prior to that time the Arcola district had been organized to the extent of electing a board of education, leasing a high school building, employing teachers and acquiring apparatus to conduct a school, holding an election

for the selection of a high school site and for the issuing of bonds and selling these bonds, and has conducted a school for nearly three years.

It is, in effect, conceded by counsel for appellants that if section 3 of the curative act is constitutional the Arcola district is entitled to jurisdiction over the overlapping territory of the two high school districts, but it is argued most earnestly and at great length that said section is unconstitutional, in that it provides a plan for the formation of school districts and establishes and confirms one district and denies the existence of another district of the same class; that it creates a preference between objects of legislation of the same class and grade; that it provides for a classification of districts not based upon any rational difference of situation or condition in the districts but on a distinction that is purely arbitrary; that its provisions cannot apply to high school districts organized in the future. In *Zeigler* v. *Douglas,* 283 Ill. 407, this court had under consideration section 3 of the curative act and construed the same, and while the constitutionality of the section was not considered or passed upon in that case it was assumed that it was constitutional. We cannot agree with counsel for appellants that if section 3 were unconstitutional the decision would have been the same, regardless of the provisions of said section. It was also assumed to be constitutional in *People* v. *Douglas,* 281 Ill. 478. If it were now held unconstitutional those decisions, in effect, would be overruled.

We do not think there is merit in the argument that section 3 of the curative act is unconstitutional because it can not apply to districts hereafter organized. Curative legislation refers, particularly, to the past and does not apply to the future. As was said in *People* v. *Madison,* 280 Ill. 96, in discussing the constitutionality of this same curative act (p. 100) : "Classification for purposes of legislation cannot ordinarily be based entirely upon existing conditions. But this rule does not apply to curative legislation. Such legis-

lation deals only with the past. It does not purport to establish a rule for future action but it deals with present conditions as a result of past action." Curative legislation necessarily forms an exception to the general rule that classification cannot be based solely on conditions already existing. (*Pollock* v. *Kansas City,* 42 L. R. A. (N. S.) 465; *People* v. *Stitt,* 280 Ill. 553.) "The requirement that laws shall be general does not mean that every statute shall have effect upon every individual and in every locality in the State. Such construction is impossible. * * * A law is general, not because it embraces all of the governed, but because it may embrace all when they are similarly situated and come within its provisions." (*People* v. *Kaelber,* 253 Ill. 552.) "A law is not local because it operates only in certain municipalities of the State if by its terms it operates uniformly throughout the State under like circumstances and situation." *People* v. *Grover,* 258 Ill. 124. See, also, *L'Hote* v. *Village* of *Milford,* 212 Ill. 418; *Douglas* v. *People,* 225 id. 536; *Dawson Soap Co.* v. *City of Chicago,* 234 id. 314.

Where two districts under the unconstitutional act of 1911 have been attempted to be organized as provided by said act and it has been found that two such districts overlapped in territory, to hold that the district which first established and has continued to conduct a high school shall be validated rather than the other follows a reasonable ground for classification and distinction between the two districts. Such classification is not purely arbitrary or based on a mere whim or caprice. It is a classification in conformity with what would ordinarily be considered to be right and just, as such terms are usually understood by the average citizen.

We have not deemed it necessary to discuss or attempt to distinguish all the authorities that have been called to our attention in the briefs. We deem the conclusion here reached is in every way in conformity with the decisions

heretofore rendered with reference to the constitutionality of the curative act and in conformity with the general principles laid down by the numerous decisions that have been decided by this court with reference to whether statutes were constitutional on the question of special legislation. See authorities cited in *People* v. *Stitt, supra; People* v. *Gordon,* 274 Ill. 462.

Counsel for appellants argue at length that the preliminary steps taken by the public authorities, and especially by the county superintendent, with reference to calling the election for the Arcola district were not in conformity with the requirements of the High School act of 1911, and that therefore section 3 could not control, because the district was not legally organized. The curative act as construed by this court does not require that all the preliminary steps to organize a high school district shall be taken in accordance with the requirements of the unconstitutional act of 1911 in order to have the curative act apply and validate the district. Indeed, it has been held that this validating act applies to every attempted organization of a high school district, whether in attempted compliance with the act of 1911 or that of 1895, or without compliance with any statute, so long as it comes within the provisions of the act. *People* v. *Craft,* 282 Ill. 483; *People* v. *Mathews,* 282 id. 85; *People* v. *Ader,* 281 id. 508; *People* v. *Madison, supra.*

Section 3 of the curative act being constitutional, the conclusion necessarily follows that as the Arcola district first established and continues to conduct a high school, it is entitled to the overlapping territory in dispute between the Arcola high school district and the Humboldt high school district.

The judgment of the circuit court must therefore be affirmed.                                    *Judgment affirmed.*