(No. 17330.—Reversed and remanded.)
THE PEOPLE *ex rel.* Patrick J. Carr, County Collector, Appellee, *vs.* JACOB L. KESNER, Appellant.

*Opinion filed April 23, 1926.*

1. MUNICIPAL CORPORATIONS—*when a statute is valid though it applies to only one city.* A law is not to be denominated local simply because it may operate only in certain municipalities of the State if by its terms it operates uniformly throughout the State upon cities in like circumstances, and a statute applying to cities of 100,000 population is not a local or special law even though at the time of its enactment there is but a single city in the State to which it can be applied.

2. SAME—*general rule as to when cities may be classified for purpose of legislation.* A classification of municipalities for legislative purposes cannot be adopted abitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes, but there must be some reasonable relation between the situation of municipalities classified and the purpose and object to be attained.

3. SPECIAL ASSESSMENTS—*amendments to Local Improvement and Revenue acts in regard to municipalities of 100,000 population are valid.* The amendments of 1917 to certain sections of the Local Improvement act and corresponding amendments of 1919 to certain sections of the Revenue act in regard to the collection of special assessments in municipalities of 100,000 or more population are not invalid as making an arbitrary and unlawful classification; nor do said amendments affect the uniformity of practice in courts of the same grade, as the only change made in such practice is as to the time of application for judgment and sale, which in no way causes any lack of uniformity between county courts.

4. SAME—*park commissioners are governed by Local Improvement act of 1897.* Boards of park commissioners created by legislative acts and granted municipal powers in regard to property under their control are municipal corporations, and in special assessment proceedings they are governed by the provisions of the Local Improvement act of 1897.

5. SAME—*amendments of Local Improvement and Revenue acts as to cities of 100,000 or more population apply to park commissioners.* The amendments of 1917 and 1919 to the Local Improvement and Revenue acts, respectively, in regard to the procedure for collection of special assessments in municipal corporations of 100,000 or more population, are applicable to boards of park commissioners where the territory under their control has the required popula-

tion, as the legislature could not have intended the amendments to apply to cities, exclusive of other municipal corporations, where the same necessity exists for the change in procedure made by the amendments.

APPEAL from the County Court of Cook county; the Hon. E. K. JARECKI, Judge, presiding.

HAROLD G. SPERLING, and D'ANCONA & PFLAUM, for appellant.

ROBERT E. CROWE, State's Attorney, and WILLIAM H. DUVAL, (HAYDEN N. BELL, and W. W. DEARMOND, of counsel,) for appellee.

FRANCIS X. BUSCH, Corporation Counsel, and LEON HORNSTEIN, for the city of Chicago, as *amicus curiæ*.

Mr. JUSTICE FARMER delivered the opinion of the court:

The county treasurer and *ex-officio* county collector of Cook county, at the July term, 1925, of the county court, made application for judgment and order of sale against certain real estate located in the city of Chicago and belonging to appellant, on account of delinquent special assessments levied against the property by the South Park Commissioners. Judgment thereon was entered by the county court on August 7, 1925, one of the days of the July term of that court. Thereafter, and at the same term of court, counsel for appellant made a written motion to set aside and vacate the judgment and order of sale for the reason that the same were premature and should not have been entered, under the law, before the September term, 1925, of the county court. After a hearing the motion was denied, motions for a new trial and in arrest of judgment were overruled, and from the order of the county court an appeal has been prosecuted to this court.

A stipulation by counsel appears in the record, showing that the South Park Commissioners levied special assess-

ments against certain real estate of appellant, in accordance with the statute, for the widening, paving and otherwise improving of South Park avenue, in the city of Chicago; that the records of the collector's office for 1925 properly described the respective properties of appellant and showed the amounts due thereon; that the necessary advertisement and notice of application for judgment and order of sale were published in the *Chicago Daily Journal* on June 20, 1925; that pursuant thereto, and for the reason appellant had not paid the special assessments and installments due, application for judgment and order of sale against appellant's property was made and obtained by the county collector at the July term of the county court of Cook county. It was further stipulated that within the territory under the jurisdiction of the South Park Commissioners the population was 100,000 or more, and that said territory was within the corporate limits of the city of Chicago.

It is the contention of appellant that as the "Board of South Park Commissioners" is a municipal corporation having within its boundaries a population of 100,000 or more, the statute providing that no application for judgment against property for delinquent special assessments shall be made in cities of 100,000 or more before the September term of the county court is applicable to special assessments levied by the South Park Commissioners.

Sections 65 and 67 of the Local Improvement act of 1897 were amended in 1917 and an additional section 64*a* was added thereto. (Laws of 1917, p. 244.) Section 64*a* provides that in cities of 100,000 or more any officer authorized to collect special taxes or assessments shall, on or before March 10 in each year, mark the number of the special tax or assessment warrant on the general tax books of the county collector opposite the description of the respective properties assessed. Thereafter it is the duty of the county collector to mark on the face of all tax bills or receipts issued by him the number of such special warrant

and the words "Special assessment due and payable." Section 65 requires the collector of special assessments to make a written detailed report, on or before April 1 in each year, of the respective delinquent special assessments to the general officer of the county authorized under the law to apply for judgment and sell lands for taxes due the county and State. By a proviso to this section it was so amended that in cities of 100,000 or more said report of the collector shall be made on or before August 1 in place of April 1. Section 67, which provides for the application for judgment and sale by the county collector, was amended so that in cities having 100,000 or more inhabitants no application for judgment for unpaid special taxes or special assessments shall be made before the September term of the county court, and there shall be included therein only such special taxes or installments thereof as have been duly marked upon the county collector's general tax books before March 10 and have also been returned as delinquent to the county collector on or before August 1.

The Revenue act of 1872 was amended in 1919 by adding one or more provisos to sections 178, 182, 184 and 191, and changing the language of section 185 sufficiently for a special application of those sections as amended to cities having a population of 100,000 or more. (Laws of 1919, p. 766.) Section 178 provides for the return or report of delinquent special assessments levied by corporate authorities to be made to the county collector on or before March 10 next after becoming payable, except in cities of 100,000 or more such return may be made on or before August 1, and the subsequent advertisement, judgment and sale of property on account of delinquent special assessments are made supplementary to and a part of the sale on account of delinquent general taxes. Section 182 provides for a newspaper advertisement after April 1, whereby the collector gives notice of the intended application for judgment and

sale of the delinquent lands and specifies that in cities of
100,000 or over separate advertisement may be made after
August 1. Section 184 provides further what such adver-
tisement may contain; that it shall appear in full in one
edition of such newspaper used, and subsequent adver-
tisement may be made where lands may have been omitted
through no fault of the collector or were erroneously de-
scribed. The proviso of the section recites that in cities of
100,000 or more the advertisement for special assessments
may be made separately and on a different date from the
advertisement for sale of lands for general taxes. Sec-
tion 185 provides that application for judgment and order
of sale shall be made by the county collector at the June
term of the county court unless necessarily prevented from
doing so, except in the case of special assessments in cities
having a population of 100,000 or more. In such cities
no application shall be made before the September term of
court, and there shall be included therein only such spe-
cial assessments or installments thereof, and interest, as
have been returned to the county collector on or before
August 1 as delinquent and have been marked on the gen-
eral tax books of the county collector on or before March 10
of the same year. Section 191, providing for the proceed-
ings before the court and entry of judgment, was amended
so that where separate advertisement and application for
judgment and order of sale are made on account of delin-
quent special assessments in cities of 100,000 or over, two
separate judgments and orders for sale,—one for delinquent
general taxes and the other on account of delinquent special
taxes or assessments,—may be made, the procedure other-
wise to remain the same.

A brief has been filed by counsel for the city of Chi-
cago as *amicus curiæ*, wherein it is stated that after the
amendments to the Local Improvement act and Revenue
act, and since 1919, all delinquent special assessments have
been handled by that city as prescribed by those amendments.

From an examination of the several provisions referred to herein of the Local Improvement act and Revenue act, it will be seen that the change or amendment for the supposed benefit and advantage of cities having a population of 100,000 or more has received due consideration, and there is no lack of clarity in following the design or intention of the legislature. We have set out the substance of the provisions of the act more fully to show the working plan of the amendments, and for the further reason that appellee has attacked the constitutionality of the amendments in that they apply to Chicago alone, and therefore to Cook county alone, and thereby destroy uniformity in the practice and procedure in the county courts of the State, being courts of the same class and grade. The two provisions of the State constitution alleged to have been violated by the enactment of the amendments are section 22 of article 4 and section 29 of article 6, the former being an inhibition against the passage of local or special laws, and the latter providing that "all laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform."

A law is not to be denominated local simply because it may operate only in certain of the municipalities of the State if by its terms it includes and operates uniformly throughout the State under like circumstances and situation. (*L'Hote* v. *Village of Milford*, 212 Ill. 418.) The amendments are not local or special legislation because applicable to cities of 100,000 or more. Though at the time of enactment such amendments may have been applicable to but a single city in the State, yet the same will apply to every city of 100,000 or more after having such a population within its boundaries. (*People* v. *Kastings*, 307 Ill. 92.) The rule is, that a classification cannot be adopted

arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities. placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purpose and objects to be attained. There must be something, in the nature of things, which in some reasonable degree accounts for the division into classes. (*L'Hote* v. *Village of Milford, supra.*)    In municipalities with large populations there are a greater number of special assessment and improvement proceedings, frequently involving large expenditures of money and including therein a great many pieces of property. The handling of such a large volume of work connected with such special assessment proceedings in cities over 100,000, and giving to such large numbers of owners of property affected more time for payment thereof, were sufficient to warrant the application for judgment and sale being made at a later time in such municipalities. We do not think the classification an arbitrary one. The proceedings and practice of the courts are construed to mean the form in which actions are brought and the manner of conducting and carrying on suits. (*People* v. *Raymond,* 186 Ill. 407.)    By the amendments enacted there was no pretense to disturb the uniformity of the practice in courts of the same grade. The practice and procedure remain the same in all county courts. Practically the only difference or change caused is one of time, providing that application for judgment and sale shall not be made until the September term of the county court upon an advertisement or notice published after August 1. This in no way creates a diversity in the practice or procedure of courts of the same class or grade, nor does it cause any lack of uniformity between such courts. We are of opinion the amendments in no way contravene the constitutional provisions mentioned.

It has been seen that the language used in the several amendments, including section 67 of the Local Improve-

ment act, refers to "cities having a population of 100,000 or more," and appellant contends the word "cities" was used by the legislature in a generic sense, and includes all municipal corporations or corporate authorities which have been vested with power to levy special assessments. We are referred also to certain sections of the act of 1895 authorizing park commissioners to make local improvements and to provide for the payment thereof. (Smith's Stat. 1923, p. 1445.) Section 11 thereof provides that special assessment proceedings by park commissioners shall be in accordance with article 9 of the act of the General Assembly relative to cities and villages, approved April 10, 1872, in so far as applicable, and provides further that all acts therein to be performed by a city or village shall be performed by the park commissioners. Section 13 provides for the collection of special assessments and making report of any delinquent list thereof to the general officer of the county authorized to collect State and county taxes. Section 14 provides that such county tax collector shall proceed to obtain judgment for such reported delinquent assessments in the same manner and within and at the same time as is prescribed in said article 9. The major portion of article 9 with reference to special assessments for local improvements was superseded by the present Local Improvement act of 1897. Section 98 of the latter act (Smith's Stat. 1923, p. 352,) provides: "Wherever authority of law now exists in corporate authorities · in this State to levy special assessments or special taxes for local improvements, and for that purpose to use the proceedings or methods provided by article 9 of an act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872, in force July 1, 1872, such corporate authorities are hereby authorized to make use of the provisions of this act for such purpose, with the same effect and to the same extent as heretofore authorized to use the provisions of said article 9; and any such corporate authorities as may be hereafter authorized by law to

levy such special assessments or special taxes, may, whether otherwise expressly authorized thereto or not, make use of the provisions of this act in like manner." Hence it appears that park commissioners in special assessment proceedings are governed by the provisions of the Local Improvement act of 1897. No particular or special procedure is outlined by the legislature to be pursued only by park commissioners in special assessment improvements, over which such commissioners have jurisdiction, but the same provisions applicable to cities are to be made use of in like manner by the park commissioners. The Board of South Park Commissioners was created by legislative act of 1869, declared to be a body politic and corporate, and thereby granted powers in regard to property under its control as were possessed by the city council of the city of Chicago in respect to its public squares and places. (*McCormick* v. *South Park Comrs.* 150 Ill. 516.) Such boards of park commissioners have been declared to be municipal corporations. (*People* v. *Salomon*, 51 Ill. 37; *South Park Comrs.* v. *Dunlevy*, 91 id. 49; *West Chicago Park Comrs.* v. *City of Chicago*, 152 id. 392.) In *People* v. *Grover*, 258 Ill. 124, this court said the word "city" has been defined to mean an incorporated town, and that it would not be going too far to hold that the word "city" included an incorporated town, citing *Burke* v. *Monroe County*, 77 Ill. 610. The court also said: "Plainly, by usage as well as by the great weight of authority, there is no explicit meaning in this country that can be given to the words 'city,' 'village' and 'incorporated town.' Frequently a reference is required to the context, and, in construing statutes, to the entire statute and the purpose for which it was passed." In *West Chicago Park Comrs.* v. *City of Chicago, supra,* the court said: "The park board, within the purview of its powers, is a corporation endowed with the same corporate functions, derived from the same source and exercised in substantially the same way as the city of Chicago. It is in

no sense a corporation organized to exercise a portion of the municipal powers and functions of the city and in subordination to it, but, within its own sphere, it has the same rank, and the exercise of its corporate powers is as exclusive of any power on the part of the city to interfere as if the two corporations occupied wholly separate areas of territory. * * * For all purposes, then, of laying out, improving and maintaining parks, boulevards, streets and like public grounds, the city and the park commissioners occupy the legal position of two independent and co-equal municipalities, each vested with exclusive jurisdiction over the public grounds committed to its care, as trustee for the public."

In accordance with the provisions of the Local Improvement act, any city, including cities having a population of 100,000 or over, exercises the power of levying special assessments for local improvements, and the South Park Commissioners, with territory having a population of 100,000 or over, under authority of the Parks act of June 24, 1895, and in accord with the Local Improvement act, exercise the same powers. The legislature provided by the amendment to section 67 of the Local Improvement act, and by the amendment to section 185 of the Revenue act, that in cities of 100,000 or more no application for judgment and sale against any property therein for unpaid special assessments should be made before the September term of the county court. If the purpose of the legislature was that additional time should be given prior to application for judgment and sale for delinquent special assessments in larger areas, having greater population and where a greater volume of special improvement work is done and with many pieces of property affected and included therein, then it would seem that the difference or distinction intended was between municipal corporations of 100,000 or more population having power to levy special assessments, and municipal corporations having the same powers but a less population, and on that account perhaps a less area and a less

volume of local improvement proceedings. We are unable to see any purpose the legislature could have had in mind in making the amendment as to the time of applying for judgment applicable to only a city of 100,000 or more, to the exclusion of any other municipal corporation of like size, kind and power, such as the South Park Commissioners. The same necessity existed, if at all, in the case of all similar municipal corporations.

In our judgment the language of the amendments, in view of the seeming purpose for which they were enacted, should be construed so as to include other corporate authorities or municipal corporations besides cities.

The order of the county court is reversed and the cause remanded, with directions to vacate and set aside the judgment and order of sale against appellant's property.

*Reversed and remanded, with directions.*